(7 Misc. Rep. 79.)

### C. B. KEOGH MANUF'G CO. v. EISENBERG.

(Common Pleas of New York City and County, General Term.   February 5, 1894.)

1. ACTION ON CONTRACT—EVIDENCE—EXCUSE FOR NONPERFORMANCE.
   Where the answer in an action for the price of building materials sets up, as a counterclaim, damages stipulated in the contract between the parties for failure to complete the delivery on a certain day, and it appears that the contract further provided that, in case delay should be caused by defendant, then the time should be extended for a period equal to such delay, plaintiff may show that the delay in delivery was caused by defendant, though the complaint does not allege any excuse.   Elting v. Dayton, (Sup.) 17 N. Y. Supp. 849, distinguished.

2. ASSUMPSIT—QUANTUM MERUIT—EXPRESS CONTRACT.
   Though goods are sold under an express contract fixing the price, the seller may sue on a quantum meruit, and recover the stipulated price.

3. MECHANICS' LIENS—TAKING NOTE FOR AMOUNT OF CLAIM.
   Taking a note for the amount due does not deprive a claimant of his right to a lien, but merely suspends its enforcement until the note is payable.

Appeal from judgment on report of referee.

Action by the C. B. Keogh Manufacturing Company against William Eisenberg to foreclose a mechanic's lien.   From a judgment in favor of plaintiff, defendant appeals.   Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Fromme Bros., for appellant.

Abner C. Thomas, for respondent.

BOOKSTAVER, J.   The complaint alleged the sale and delivery to the defendant between November 1, 1890, and May 8, 1891, of certain merchandise consisting of doors, sashes, blinds, and other building materials, at the agreed price of $4,200, and of certain

other materials, not included in this contract, of the value of $112.95, and admits payments to the amount of $1,500, leaving a balance of $2,812.95 and interest claimed to be due plaintiff. The answer, after certain denials, set up three counterclaims, each based on a contract between the parties dated November 10, 1890, which contract was offered in evidence on the trial. The first of these counterclaims is to the effect that the plaintiff delayed for 80 days after December 30, 1890, to deliver said goods, and stipulated damages, according to the contract, at the rate of $20 per day, is demanded, amounting to $1,600. The second of the counterclaims alleges that part of the materials contracted to be delivered was not furnished at all, and that defendant purchased them elsewhere at an expense of $200. The third counterclaim is for $1,000 for alleged damages in loss of rent caused by delay in furnishing materials. To these counterclaims a reply was interposed which denied all the allegations contained in each counterclaim. After issue joined, the court ordered a bill of particulars of the various items of the counterclaims. The issues so joined were tried by a referee, who found in favor of the plaintiff the full amount of its claim; deciding, in substance, that the plaintiff was delayed by the fault of carpenters and other workmen employed by defendant, and that, as to many different items of trim, the plaintiff, prior to December 30, 1890, delivered a quantity sufficient to complete the buildings in controversy, and afterwards, at the request of defendant, made further deliveries in excess of the quantity it should have been required to deliver. From the judgment entered on the referee's report, this appeal is taken.

The appellant contends that inasmuch as the complaint alleges a cause of action for goods, wares, and merchandise furnished, merely, and does not expressly set forth that such claim is based on a written agreement, while the referee finds that whatever materials were furnished were delivered under a written contract at a fixed price, which provided that all the material should be delivered not later than the 30th of December, 1890, under a penalty for delay, and further found that some of the goods were furnished as late as the 6th of April, 1891, he erred in admitting evidence tending to show why the delivery was not completed within the time stipulated, the complaint not alleging any excuse for delay. This contention rests on Elting v. Dayton, (Sup.) 17 N. Y. Supp. 849. In that case, as appears from the opinion, the complaint alleged that on a certain date the plaintiff entered into a contract with the defendant to do certain work and furnish certain materials at a fixed price, and that he had fully kept and performed the contract, and had performed all the conditions thereof, on his part. The answer admitted the contract, which it alleged was in writing, and a copy was annexed thereto. The answer denied that the plaintiff had kept and performed the contract, or its conditions, upon his part, and then alleged, among other things, that the agreement provided the plaintiff would, on or before a certain date, complete his contract, under a penalty. On the trial there was no dispute but that the contract was not completed at the time fixed

in it, or for some time after. When the plaintiff offered evidence tending to excuse his failure to perform, it was objected to as incompetent, for the reason that the plaintiff had sued upon a contract, alleging he had strictly kept and performed all the conditions thereof, and that no excuse for nonperformance and no modification or waiver had been set up in the complaint. The referee overruled the objection, to which defendant excepted, and on appeal this ruling was held error. We think that case well decided, on the pleadings and facts then before the court, but they differ materially from the pleadings and facts now before us. In this case the complaint did not set up a contract, nor aver performance of all its conditions. But it may be argued the answer did allege the written contract, and avers its breach, in that the work was not performed within the time therein limited, which was denied by the reply, and thus the same question is presented which was passed upon in Elting v. Dayton, supra. To this we answer the contracts in the two cases differ very materially. The appellant has laid much stress upon the provision in the contract which called for the full performance of it not later than the 30th of December, 1890, while he has studiously overlooked the further provision in the same paragraph of the contract, and separated from the one insisted on by him by a comma only, to the effect that if delay was caused by the defendant the time of the plaintiff for the completion of the contract should be extended a corresponding length of time, so that the whole paragraph reads as follows:

"And the said parties of the second part hereby agree to commence furnishing trim on November 20, 1890, and to complete and fully furnish the entire contract not later than December 30, 1890, except they shall be delayed by reason of delay on the part of the party of the first part, and then only at such time later than said 30th day of December, 1890, as will be equal to the time delayed by reason thereof, and then the time extended for the completion of the said contract shall be equal to the actual delay caused by said party of the first part."

Reading the whole passage together, as we must, in order to ascertain its meaning, the intention of the parties, clearly, was that the plaintiff should have until the 30th of December, 1890, to complete the contract, plus such additional time as would be equal to the delay caused by the defendant, if any. Viewed in this light, the testimony admitted under appellant's objection was competent and proper, not to prove any waiver or modification of the contract on the part of the defendant, nor to excuse nonperformance on the part of the plaintiff; but to show a performance by the plaintiff within the terms and conditions of the contract; in other words, to show how much the time limited in the contract had been extended by its own provision. This is the reverse of what was attempted in Elting v. Dayton, supra. It cannot be successfully argued that as the penalty for delay is inserted in the agreement after the provision for additional time in case the defendant caused the delay, and the penalty clause contains nothing respecting such delay, the latter clause must control, and the defendant recover the penalty, for such a construction would put a premium upon the defendant's own wrongdoing, and would be unconscionable.

So far on the appellant's own theory of the law of this case. But we do not understand that where there is a specific contract for a certain service, at a fixed price, the plaintiff must in every case set forth that contract in his complaint, and aver performance or excuse nonperformance, where the defendant has himself been guilty of a breach of the contract, as the referee has found to be the fact in this case, both in respect to delay and to payment. Where there has been a breach of the contract on the part of the defendant, the plaintiff may waive the contract and its breach, and sue on a quantum meruit, just as if no contract had been made, only in that case he would waive his damages for the breach, or he may set up the contract and sue for his damages on the breach, in which case he must excuse nonperformance on his part in the complaint. So, where the plaintiff has fully performed, as the referee has found this plaintiff did, he may still sue on a quantum meruit, and recover, even if the proof shows an express contract at a fixed price. The only effect, in such a case, of proof of an express contract fixing a price, is that the stipulated price becomes the quantum meruit in the case. It is not a question of variance, but only of the mode of proof of the allegations of the pleadings. Fells v. Vestvali, *41 N. Y. 152. The Code undoubtedly requires that the complaint shall contain a plain and concise statement of the facts constituting a cause of action, but, as was pointed out in Clark v. Tryon, (Com. Pl. N. Y.) 23 N. Y. Supp. 780, this means—

"Those facts which the evidence on the trial will prove, and not the evidence which will be required to prove the existence of the facts. In other words, what the pleader is called upon to allege in the complaint is the substantive facts constituting the cause of action, and not the evidential facts from which the existence of the substantive facts is to be inferred."

In the case under consideration the substantive facts are the furnishing of certain goods, wares, and merchandise to, and which were used in, defendant's buildings; and these are well sustained by the evidential facts found by the referee, of the performance by the plaintiff of a specific contract at a fixed price, according to its terms, as extended by reason of defendant's delay. If we are correct in these conclusions, it not only follows the evidence objected to was properly admitted, but the referee did not err in refusing to dismiss on the same ground which was the chief one argued on this appeal.

Another ground on which the appellant moved to dismiss the complaint was that the plaintiff had failed to prove what goods or materials were furnished to the defendant, and used in the buildings on the premises. This may properly be considered with the exception to the tenth finding of fact, which is as follows:

"(10) That as to many kinds of articles included in said trim the plaintiff furnished on or prior to December 30, 1890, an ample quantity thereof to complete said building, and thereafter, at the request of defendant, made further delivery of the same kind of articles in excess of the quantity which it should have been required to deliver."

A bill of particulars of the defendant's counterclaim was ordered by the court, and furnished by the defendant. From this bill it will appear that the entire alleged value of the goods fur-

nished by the plaintiff after December 30, 1890, was only $624.35, and the entire amount claimed for goods purchased by the defendant of parties other than the plaintiff amounted to $200 only, thus admitting that all of the other trim was furnished. But it appears by the evidence of Mr. Tebbetts that the actual value of the goods furnished by the plaintiff after December 30th, instead of being $624.35, was $217 only. Even if there were proof that goods to this amount were not furnished, the amount is so small, in comparison with the contract price for all the goods, that the referee would have been justified in refusing to dismiss the complaint on this ground, and in finding that the contract had been substantially complied with; for it has been repeatedly held that actions of this character can be maintained where there has been a substantial compliance, although matters of small amount or value have not been done by the contractor according to the terms of his contract. But we think, in this case, there is abundant proof that all of the goods called for by the contract were furnished. Mr. Tebbetts' testimony is not seriously qualified or contradicted, and we think substantiates the referee's findings. Besides, the testimony of Peyser, Keogh, Chrystie, and others abundantly supports the finding, as do the following considerations: The defendant claims to have purchased 1,400 feet of base because of the failure of the plaintiff to deliver. Tebbetts says the entire amount of base required, allowing 10 per cent. for waste, was 4,200 feet. The amount delivered, as shown by the receipts in evidence, was as follows: December 12, 1890, 1,500 feet; on same day, 1,852 feet; on the 13th December, 958 feet; on the 6th February, 60 feet; on the 6th April, 250 feet; making a total of 4,620 feet. In other words, more than enough to finish the building was delivered to the defendant by the plaintiff prior to the 30th day of December, 1890. The defendant claims to have spent $48.50 for wainscoting not furnished by the plaintiff. According to Mr. Tebbetts' testimony, the entire amount of wainscoting required was 7,000 lengths of yellow pine and 1,400 lengths of white wood. The case shows deliveries of wainscotings as follows: December 19, 1890, 1,300 lengths; December 20th, 2,750 lengths; December 30th, 3,950 lengths; February 17th, 500 lengths; and February 28th, 217 lengths; making a total of 8,717 lengths. And here, again, we find that 8,000 lengths were furnished on and prior to December 30, 1890, or much more than called for by the contract. On the 13th December, 1890, the case shows 1,400 lengths of whitewood wainscoting was furnished, which was just the amount required by the contract; but, notwithstanding this, 60 lengths were afterwards furnished, on the 16th February, 1891. The defendant claimed to have paid $94 for sink backs and pipe casings. The receipts show delivery of material of this kind. The specifications stipulate that pipe casings are only to be supplied for the kitchens. The uncontradicted evidence is that pipe casings were used in the bathrooms. The entire amount of chair rail in the two buildings, as tested by actual measurement, was 1,796 feet. This included 1,464 feet in the apartments, and 332 feet in the stores. The specifications do not require the plaintiff

to furnish any chair rail for the stores, and all of that used was apparently obtained from the plaintiff without compensation. We think it clearly appears from the evidence that the amount of chair rail delivered at the buildings before December 30th was 1,900 feet, or much more than necessary to put up all the chair rail called for by the contract. Four boxes of glass were delivered on the 13th January, and were quite sufficient to complete the buildings. However, a further delivery of three boxes was made on the 6th of April. This was because the glass first delivered was broken after it came to the buildings, and through no fault of the plaintiff. We therefore think the referee was abundantly justified in refusing to dismiss the complaint upon this ground, and also in making the findings he did.

Another ground on which the defendant moved to dismiss the complaint was that the notice of lien was not filed within 90 days of the completion of the work. The testimony shows that the last item was furnished on the 6th April, 1891, and the referee has so found. The lien was filed on the 8th day of May, 1891,—much within the time limited by law for filing the same.

Defendant claims the plaintiff has waived any right to a lien because the contract proved on the trial showed that it was to take part payment in notes having three months to run, and the last of which was not to be given until 30 days after the work had been fully completed, thus carrying it beyond the time when a lien could have been filed. It is a well-established rule in this court that taking a promissory note for the amount due does not deprive the claimant of his right to acquire a lien. The only effect is to suspend its enforcement during the period for which credit is thus given. And the mere agreement to receive the note in payment does not deprive the plaintiff of his right to bring the action if such note was not delivered and paid when due. Miller v. Moore, 1 E. D. Smith, 739; Lutz v. Ey, 3 E. D. Smith, 621; Althause v. Warren, 2 E. D. Smith, 657. But it is unnecessary to discuss this subject further, as there is not a particle of proof in the case that the defendant ever gave or even tendered these notes. A mere agreement to take notes certainly cannot avoid the mechanic's lien law, if the defendant willfully violates the conditions of the contract by refusing to give the notes.

The defendant objected to one of the witnesses for the plaintiff testifying as to what Simon Peyser had said in regard to the furnishing of materials and the cause for delay in the work, which was overruled by the referee, and he excepted. But the defendant had before that time testified that Peyser was his representative at the building; that he (defendant) did not exercise general supervision over the building, but the superintendent did, and that he told the defendant what was needed, and everything that was going on, who was furnishing the material right and who was not; that, while he (Eisenberg) gave some orders, Peyser had power to give them, also; that he himself never receipted for goods delivered, but that it was the duty of Eisenberg to do so; and that he was in charge there. It thus appears that the defendant himself relied

upon Peyser for information as to what was going on at the buildings, and it would be strange if the plaintiff did not have a right to rely upon the same information, and to give it in evidence, if material; and that it was material is apparent without argument.

We have carefully examined the other exceptions taken by the defendant during the progress of the trial, but do not think there was any substantial error committed by the referee; certainly, none which could in any way have affected the result. The judgment should therefore be affirmed, with costs. All concur.