STECHER LITHOGRAPHIC COMPANY, Respondent. v. HORACE INMAN et al., Appellants.

1. EVIDENCE — WHEN ADMISSIONS, MADE BY DULY AUTHORIZED AGENT AND REPRESENTATIVE OF A PARTY, ADMISSIBLE AGAINST HIS PRINCIPAL. In an action to recover an amount claimed to be due upon a contract licensing defendants to manufacture multi-color printing presses, which would print colored labels equal to a specimen annexed to the contract, under patents owned by the plaintiff, the plates for such presses to be furnished by the plaintiff, which action was defended upon the ground that the plates furnished were not such as were called for by the contract, and that, therefore, defendants were unable to use them and were obliged to procure others, at great expense and delay, from other parties; evidence is admissible of statements by an employee of the defendants having full charge of the work and the printing machines in the absence of the defendants, with authority to attend to everything relating thereto, made in the presence of the president of the plaintiff and the superintendent of the company for whom the defendants were furnishing presses for printing colored labels, that the press worked "very nicely and that he was perfectly satisfied with it," since such statement was made while such employee was discharging his duty as an agent and representative of the defendants, and while he was acting within the scope of his authority; his acts and declarations were, therefore, part of the *res gestæ*.

2. SAME — WHEN STATEMENTS MADE BY THIRD PARTY IN PRESENCE OF DULY AUTHORIZED AGENT OF A PARTY ADMISSIBLE AGAINST HIS PRINCIPAL. Evidence is also admissible of statements by the superintendent of the company for which the defendants were furnishing the presses, made at the same time in the presence and hearing of defendants' repre-

sentative, who acquiesced therein, to the effect that such company was satisfied with the work turned out on the machines.

*Stecher Lithographic Co.* v. *Inman,* 67 App. Div. 625, affirmed.

(Argued March 26, 1903; decided May 12, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 12, 1901, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*H. V. Borst* for appellants. Numerous errors were committed upon the trial in the admission of evidence which call for a reversal of the judgment. (*Foote* v. *Beecher,* 78 N. Y. 158 ; *Jefferson* v. *N. Y. E. R. R. Co.,* 132 N. Y. 487 ; *Schoonmaker* v. *Wolford,* 20 Hun, 168 ; *Matter of Smith,* 95 N. Y. 527 ; *Eldredge* v. *Eldredge,* 79 Hun, 516.)

*C. C. Werner* for respondent. There was no error in the admission or rejection of evidence. (*Curtis* v. *Gano,* 26 N. Y. 426 ; *Scattergood* v. *Wood,* 79 N. Y. 263 ; *Saalwasser* v. *Hazlitt,* 18 Ill. App. 243 ; *Baird* v. *Daly,* 68 N. Y. 547 ; *Van Wycklen* v. *City of Brooklyn,* 118 N. Y. 429 ; *Fox* v. *Buffalo Park,* 21 App. Div. 321.)

HAIGHT, J. This action was brought to recover the amount claimed to be due and owing under a written contract entered into between the parties to this action. Under the provisions of the contract it is recited that the plaintiff is engaged in the lithographic business and is the owner of an invention known as a multi-color printing press, upon which letters patent had been issued by the United States of America ; that the defendants are engaged in the manufacture of machinery and, as such, had entered into a contract with the American Cereal Company to furnish it with a combination machine designed to print its labels and attach them to paper boxes in which

the goods of the cereal company were to be packed. In order to carry out their contract with the cereal company the defendants entered into an agreement with the plaintiff by which the defendants were given a license or right to manu-facture the plaintiff's multi-color printing press for the cereal company, and that the plaintiff would furnish such zinc print-ing plates properly engraved for first-class work as may be needed by the cereal company at stipulated prices specified in the contract.

Upon the trial it was contended on behalf of the defend-ants that the plates furnished by the plaintiff were not such as were called for by the contract, and that the best results could not be obtained from their use. In order to sustain the plaintiff's claim, Frank A. Stecher, the president of the plain-tiff corporation, was sworn as a witness and testified that he had a conversation with the defendant Horace Inman in reference to the contract, and that Inman told him he was going to travel abroad and would not be at home; that he had placed a Mr. Russell in full charge of the printing busi-ness and of the machine, and that he would attend to all the correspondence and look after all of the particulars, and attend to everything connected with the machine; that thereafter the witness visited Cedar Rapids and saw the machine run-ning while it was still in charge of Russell. He was then asked to state the conversation " between yourself and Russell at the place at Cedar Rapids about this machine." To this question an objection was interposed by the defendant as "incompetent, immaterial, and that the defendant cannot be be bound by the statements of Mr. Russell, and that the statements of the witness to Mr. Russell are merely hearsay and not binding upon the defendant." The objection was overruled and an exception was taken. The witness answered : " Mr. Russell took me into the office of the Cereal Company and made me acquainted with the superintendent. The super-intendent showed me two packages of Rolled Oats with labels pasted on them. On one package was a label of our make, printed from our plates, and the other package had a label

the same as the one pinned on the contract; and he told me that the label printed off our press was equal and, in fact, superior to the other label; and he told me that he saw the press running and he was very well satisfied with the work turned out. Mr. Russell also spoke about the press doing work very nicely, and that he was perfectly pleased with the result." Thereupon the defendant moved to strike out the statement made by the superintendent in the office of the cereal company, but limited his motion to the statement made by the superintendent in the presence of Mr. Russell. The motion was denied and an exception was taken. It is now contended that these rulings were improper, and that the exceptions taken thereto by the defendant require a new trial.

Two questions are raised for consideration. The first is as to the competency of the declaration of Mr. Russell as to the character of the work done by the press, and the second is the competency of the declaration of the superintendent of the cereal company made in the presence of Russell to the same effect. With reference to the first question, it appears, as we have seen, that Mr. Inman had advised the president of the plaintiff corporation that he was going abroad and that he had placed Mr. Russell in full charge of the machine and of the printing business, and that he would attend to all the correspondence and look after all the particulars pertaining thereto. Russell was thereby authorized to represent the defendant Inman, and act for him in his place and stead. If there was anything wrong with the plates the attention of the plaintiff's president should have been called thereto while there was time to remedy the defect. Whatever, therefore, Russell did or said on the occasion alluded to was done and uttered while he was discharging his duty as an agent and representative of the defendant, and while he was acting within the scope of his authority. His act and declarations were, therefore, part of the *res gestæ*.

The admissions or declarations of an agent subsequent to a transaction in controversy, or after his agency has terminated, are not binding upon, or evidence against, his principal.

But when the admission or declaration is made at the time of the transaction, or during his employment, when it pertains to the matter in hand, as agent, which is within the scope of his employment, his admissions and declarations are competent, though not conclusive against his principal. (*Thallhimer* v. *Brinckerhoff*, 6 Cow. 90; *Price* v. *Powell*, 3 N. Y. 322; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.*, 143 N. Y. 559; *Booth* v. *Cleveland Rolling Mill Co.*, 74 N. Y. 15, 28; *Keogh Mfg. Co.* v. *Eisenberg*, 7 Misc. Rep. 79, 87; affirmed, 149 N. Y. 592, on opinion below; *Vaughn Machine Co.* v. *Quintard*, 37 App. Div. 368; affirmed, 165 N. Y. 649.) We consequently are of the opinion that no error was committed by the trial court by admitting the declarations of Russell under the circumstances disclosed.

With reference to the declarations of the superintendent of the cereal company, they, of course, are not binding upon that company; but that company is not represented in this litigation. The only ground upon which these declarations can be justified is that they were made in the presence of Russell, who stood by, acquiesced in, and confirmed what was said with reference to the character of the work produced by the press. If, as we have seen, Russell was then acting within the scope of his employment in the place of the defendant, and he acquiesced in and confirmed the declarations of the superintendent, they were not objectionable. We have recently had occasion to examine this question with some care in a criminal case, and what we then said, we believe, correctly states the rule that should govern trial courts in the admission of this class of evidence. " There are circumstances under which the declarations of persons made in the presence of the accused are competent, but they are regarded as dangerous and should always be received with caution and should not be admitted unless the evidence clearly brings them within the rule. Declarations or statements made in the presence of a party are not received as evidence in themselves, but for the purpose of ascertaining the reply the party to be affected makes to them. They are only competent when the person

affected hears and fully comprehends the effect of the words spoken and when he is at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement." (*People* v. *Kennedy*, 164 N. Y. 449, 456. See, also, Wharton's Law of Evidence, sections 1136, 1137; Greenleaf on Evidence, sections 197, 199; *People* v. *Koerner*, 154 N. Y. 355, 374.)

There are other rulings made by the trial court which are brought up for review. We have examined them but find none that call for a reversal of the judgment.

The judgment should be affirmed, with costs.

PARKER, Ch. J. (dissenting). I think the court erred in refusing to strike out a portion of the testimony of the president of the plaintiff, which was not responsive to the question put to him, and that the error is a very serious one and ought not to be allowed to pass uncorrected lest it establish an unfortunate precedent.

The defendants contracted with the American Cereal Company to construct for it certain machinery for boxing and packing, for printing labels and for putting labels on boxes, and the contract included the furnishing of plates to print labels. Thereafter defendants entered into a contract with plaintiff to furnish, among other things, such plates. For the breach of that contract, among other things, a recovery has been had in this action.

Whether such plates were in accordance with the contract, and would print labels substantially equal to samples annexed to the contract, constituted the leading issue.

On the trial plaintiff's president testified that he visited the works of the American Cereal Company, and met there Mr. Russell, a representative of defendants. The following question was asked him by his counsel:

" Q. Will you now state what the conversation was between yourself and Russell at the place at Cedar Rapids, about this machine?

" Defendant objects as incompetent, immaterial, and that the defendant cannot be bound by the statements of Mr. Russell, and that the statements of the witness to Russell are merely hearsay and not binding upon the defendant.

." Received.  Exception.

" Mr. Russell took me into the office of the Cereal Co. and made me acquainted with the superintendent.  The superintendent showed me two packages of rolled oats, with labels pasted on same. , On one package was a label of our make, printed from our plates, and the other package had a label the same as the one pinned on the contract, and he told me that the label printed off our press was equal to, and, in fact, superior to the other label, and he told me he saw the press running and he was very well satisfied with the work turned out.  Mr. Russell also spoke about the press doing work very nicely, and that he was perfectly.pleased with the result.

·" Motion was made to strike out the statement that the witness says was made by the superintendent in the office of the Cereal Co.  Motion limited to the statement made by the superintendent there to the witness, in the presence of Mr. Russell.

" Motion denied.  Exception."

That portion of the answer which counsel moved to strike out was not responsive to the question.  Counsel for defendant was right in his practice in moving to strike out, and if the evidence was incompetent, the refusal to grant his motion was error for which reversal should be had.  (*Holmes* v. *Roper*, 141 N. Y. 64, 69 ; *Hickenbottom* v. *D., L. & W. R. R. Co.*, 122 N. Y. 91, 98 ; *Warren C. & M. Co.* v. *Holbrook*, 118 N. Y. 586, 593; *Denise* v. *Denise*, 110 N. Y. 562, 567; *Platner* v. *Platner*, 78 N. Y. 90, 102.)

The disastrous effect of this evidence upon the defense interposed is apparent at a glance.  Defendants purchased the plates, machinery, etc., of plaintiff for the use of the American Cereal Company.  That company was to pay defendants, and they were to pay plaintiff.  So if plaintiff could prove that the Cereal Company, for which the work was done, was

satisfied with it, there would seem to be no excuse for the refusal of defendants to play plaintiff, and that view, necessarily, a jury would take.

It would have been competent, of course, for plaintiff to have proved that the Cereal Company accepted the work, and was satisfied with it, by the testimony of one of its officers having knowledge of the facts. It did not, however, and probably could not have done so. But it did something almost as effective, so far as the jury were concerned, for its president testified, without being requested to do so, that the superintendent of the Cereal Company told him in the presence of Mr. Russell, who was representing defendants, " that the label printed off our press was equal, and, in fact, superior to the other label, and he told me he saw the press running and he was very well satisfied with the work turned out."

Counsel for defendants struggled to get this most damaging bit of testimony out of the case. It is now sought to justify the court in retaining that testimony, in spite of the protest, not on the ground that plaintiff had the right to prove declarations of an officer of the Cereal Company in its behalf, but on the ground that, under the circumstances surrounding the making of the statement, it may be treated as an admission by defendants' representative, inasmuch as he did not protest against the statement.

It is true there have been instances, though few, in which the courts of this state have allowed the proving of statements of a third party as evidence of an admission on defendant's part when the circumstances surrounding the statement were such that it could be fairly said defendant was called upon to speak, and hence his failure to speak amounted to an admission.

This subject has been discussed in *People.* v. *Smith* (172 N. Y. 210, 233); *People* v. *Kennedy* (164 N. Y. 449, 456); *People* v. *Page* (162 N. Y. 272, 276); *People* v. *Koerner* (154 N. Y. 355, 374); *People* v. *Willett* (92 N. Y. 29, 31); *Lanergan* v. *People* (39 N. Y. 39); *People* v. *Holfelder* (5 N. Y. Crim. R. 179, 183).

My attention has been called to *no* case in this state where

such evidence was held to be admissible, and I have been able to find but *two ;* and both of them are criminal cases : *M'Kee* v. *People* (36 N. Y. 113, 115) and *Kelley* v. *People* (55 N. Y. 565, 571). In both of those cases the accused, immediately after the commission of the crime, made answer to *some* statements or questions and remained silent when other statements were made during the same conversation ; and an account of the whole conversation was held admissible as a part of the *res gestæ.*

Attempts have been made to apply the rule in civil cases, but without effect. (*Gibney* v. *Marchay*, 34 N. Y. 301, 305 ; *Thomas* v. *Gage*, 141 N. Y. 506, 508 ; *Bank of B. N. A.* v. *Delafield*, 126 N. Y. 410, 418 ; *Learned* v. *Tillotson*, 97 N. Y. 1, 8 ; *Le Bau* v. *Vanderbilt*, 3 Redf. 384, 393 ; *Talcott* v. *Harris*, 93 N. Y. 567, 571.)

Many of the cases in this state quote the following expression from one of the early English cases (*Child* v. *Grace*, 2 C. & P. 193): "Really it is most dangerous evidence." Chief Justice BEST concluded in that case as follows: "I will never receive such evidence, unless, as my Lord KENYON used to say, the twelve judges in the House of Lords tell me that I must." In *People* v. *Koerner* (*supra*) it was said that such evidence "should always be received with caution, and ought not to be admitted unless the evidence is of direct declarations of a kind which naturally call for contradiction, or some assertion made to a party with respect to his rights, in which, by silence, he acquiesces."

Now it is sought to invoke this rule, which, according to this court, must be cautiously applied, to make out an admission, not of the party himself, but of his representative.

If it were prudent to extend this exceptional rule to civil cases, it certainly should not be applied in a case like this, where the circumstances surrounding its making certainly did not call upon defendants' representative to challenge it. The defendants were then attempting to complete the work satisfactorily to the American Cereal Company, so that they could receive their compensation ; and, necessarily, it was in

their interest at that time to satisfy the Cereal Company, and to persuade its officers, if they could, that the press was printing labels " equal and, in fact, superior to the other labels." It seems little short of absurd to suggest that defendants' representative was bound at that time to protest that the superintendent was wrong, and that, in fact, the plates were poor and the press good for nothing, or else must be deemed to have made an admission that the superintendent was right, although later on the controlling officers of the Cereal Company might have reached an entirely different conclusion than the superintendent, and condemned both press and plates.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BARTLETT, MARTIN and VANN, JJ., concur with HAIGHT, J.; GRAY and O'BRIEN, JJ., concur with PARKER, Ch. J.

Judgment affirmed.