WILLIAM L. WALLACE, Appellant, *v.* GEORGE C. TAYLOR, as President of the AMERICAN EXPRESS COMPANY, a Voluntary Association, Respondent.

Second Department, February 2, 1923.

Contracts — action for breach of contract to furnish permit for delivery of goods on pier for foreign shipment on letter of credit — permit received in forenoon of day it expired — question for jury whether permit was provided in time for plaintiff's assignor to make delivery of goods — evidence — error to exclude letter by defendant that failure to make shipment within time of letter of credit was not fault of plaintiff's assignor — error to exclude evidence that defendant agreed to pay amount of credit if plaintiff's assignor would ship on later boat.

In an action to recover damages for breach of a contract wherein the breach alleged was the failure of the defendant to furnish a permit to the plaintiff's assignor for the delivery of goods on a pier for foreign shipment in time to permit the assignor to deliver the goods so that they might be shipped on a boat that would deliver them to a foreign port in compliance with the sale made by the assignor and a letter of credit established by the purchaser, it appeared that the goods were in a bonded warehouse in New York city; that the boat on which they were supposed to be shipped docked in Hoboken; that the permit was delivered by the defendant to the plaintiff's assignor at about ten-thirty o'clock in the morning and expired at five o'clock in the afternoon of the same day; that at the request of the defendant the plaintiff's assignor made an effort to deliver the goods but failed; that it was customary to furnish a permit two days before the sailing of a boat and that there was a congestion of traffic at the ferries at the time in question.

*Held,* that it was error for the court to dismiss the complaint upon the merits at the close of the plaintiff's case, since a question of fact was presented for the jury, under the evidence, as to whether or not the defendant was negligent in failing to secure and deliver the permit long enough before the boat sailed to permit the plaintiff's assignor to deliver the goods at the pier.

It was likewise a question for the jury to consider whether or not the plaintiff's assignor should have removed the goods from the bonded warehouse prior to the receipt of the permit.

It was error to exclude a letter written by defendant's general traffic manager and offered in evidence by the plaintiff, to the effect that the failure to make shipment of the goods in question at the time they should have been shipped was due to conditions entirely beyond the control of the plaintiff's assignor; the letter was an admission against defendant's interests, which was material upon the question of negligence.

It was likewise error to exclude a statement of defendant's agent to the plaintiff's assignor that if the assignor would ship on a later boat, the credit established in the foreign country would be good, since it tended to establish an agreement by the defendant that in consideration of the waiver by the assignor of its claim for damages resulting from the defendant's negligence and the shipment of the goods by the next steamship, the defendant would pay the amount of the credit.

APPEAL by the plaintiff, William L. Wallace, from a judgment of the Supreme Court in favor of the defendant, entered in the office

of the clerk of the county of Richmond on the 21st day of April, 1922, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*George Gray Zabriskie,* for the appellant.

*John G. Milburn, Jr.* [*A. Delafield Smith* with him on the brief], for the respondent.

YOUNG, J.:

The action is brought to recover upon an alleged breach of contract. The complaint states three causes of action. The first alleges that the American Express Company opened a credit in favor of Hooker Electrochemical Company for $5,625, available until July 5, 1920, upon presentation of draft, bills of lading, etc., covering the shipment by the Hooker Company of certain camphor slabs, June sailing, and promised to pay that amount upon presentation of the above documents; that on June 14, 1920, for a valuable consideration, it agreed with the Hooker Company to attend to the forwarding of the camphor, to secure space in a vessel, sailing in June, to furnish permit for delivery on pier, and to procure the documents required to obtain payment in accordance with the terms of the credit advice, etc.; and that in reliance upon said permits, the Hooker Company canceled other arrangements theretofore made for the shipment of the camphor. It then alleges the failure of the express company to furnish the necessary permit for a vessel sailing in June, and the documents called for by the credit advice, and that the Hooker Company, plaintiff's assignor, was thereby prevented from making delivery, etc. It also alleges performance by the Hooker Company and refusal of the express company to pay the price of the camphor. It further alleges that with the express company's consent and at its request, the camphor was shipped by the earliest vessel sailing thereafter, the steamship *Ansaldo V,* sailing in July, but that the consignee refused to accept delivery and the camphor was thereafter sold and the Hooker Company damaged $3,319.39, and that the latter company duly assigned its claim to plaintiff.

The second cause of action repeats the allegations contained in the first, so far as they aver the issuance of the credit, the agreement of the express company to obtain the permit, etc., and its failure so to do, and further alleges in substance that the express company, on June 24, 1920, furnished a permit for delivery of the camphor to the steamship *Ansaldo V,* to sail in July, 1920, and agreed that if such delivery was made, it would procure the necessary documents and pay the price fixed by the credit advice; that the Hooker Company made such delivery on June 30, 1920, but that

the express company refused to perform. It then repeats the allegation of the refusal of the consignee to accept the delivery, the sale of the camphor, etc., and alleges damage to the Hooker Company, and assignment of its claim to the plaintiff.

The third cause of action alleges in substance the agreement of the express company to attend to the forwarding of the camphor, procure permit, documents, etc., performance by the Hooker Company on its part, failure and neglect of the express company, consequent damage and assignment of the claim to plaintiff.

The answer admits the issuance of the credit, but in substance denies liability, and alleges that the Hooker Company failed to comply with the terms of the credit, which was never extended, but expired. It also sets up a counterclaim of $121.21 for freight, insurance, etc., in forwarding the camphor.

Prior to the trial the parties stipulated that the amount of plaintiff's damage, if he prevailed, was $3,198.18, and that the counterclaim be withdrawn; that the bill of lading and shipping documents covering shipment on the steamship *Ansaldo V* were delivered by the steamship company to defendant on July fifteenth, and by it to plaintiff, and that the goods were sold in Genoa, Italy, by agreement of the parties without prejudice.

The complaint is evidently framed with a view to present the issues from every possible angle. In substance, however, the action is founded upon the alleged failure of the express company to perform its agreement to obtain the permit in time for a June sailing as required by the terms of the credit advice.

It was shown upon the trial that after this advice of credit had been sent by respondent's financial department, its foreign department communicated with the Hooker Company offering its services to secure the actual transportation of the goods to Genoa, Italy. This offer was accepted. Under this arrangement the respondent undertook to secure for the Hooker Company space upon the first available outgoing steamer and to arrange for the fulfillment of the regulations of the port and to secure a permit from the trans-shipping line authorizing the Hooker Company to deliver the goods in question to the dock for shipment.

On Friday, June eighteenth, the Hooker Company notified the respondent that the material was in warehouse in New York city ready for shipment. On June twenty-first the respondent wrote the Hooker Company that arrangements for the shipment had been made upon the steamship *Edgehill*, and undertook to secure the proper permit for that ship. On June twenty-second it mailed that permit to the Hooker Company. It also appeared that the respondent notified the Hooker Company on June twenty-second,

over the telephone, about four P. M., that the permit had been mailed. These two letters did not reach the Hooker Company until June twenty-third.

The Hooker Company failed to deliver the goods to the dock in time to catch the steamship *Edgehill,* which was the last ship which sailed for Genoa, Italy, in the month of June; and, therefore, did not comply with the terms of the advice of credit for a June sailing. Arrangements were then made for the delivery of the goods to the steamship *Ansaldo V,* which sailed some time in July, 1920, and another permit for this ship was delivered to the Hooker Company. The goods were shipped on the *Ansaldo V,* arrived at Genoa, and were refused by the consignee on the ground that the shipment had not conformed with the credit purchased by him, and by agreement of the parties the goods were sold.

It appears without dispute that defendant failed to deliver the permit for the *Edgehill* until ten-thirty o'clock A. M. on June 23, 1920, and this, according to its terms, expired that day, so that the Hooker Company had from ten-thirty A. M. until five P. M. to get the goods from the warehouse and truck them across the ferry to the dock where the boat lay. This the Hooker Company endeavored to do, but failed.

The witness Esler, assistant traffic manager of plaintiff's assignor, testified that when he received the permit he called Mr. Pohanka, defendant's representative, on the telephone and told him there was not enough time on the permit, and that Pohanka told him to go ahead and try to make the ship anyhow, and that accordingly Esler immediately called up his truckman, who came over, and he gave him the necessary papers, the permit, etc. The truckman arrived about eleven-thirty in the morning from the Kenny Warehouse and Transportation Company. Esler said he told the truckman to go and take a look at the cases and see if they were all right and to advise him as to the line-up and congestion at the warehouse, and whether his presence was required to get the shipment out quicker. The merchandise was in a bonded warehouse at Abingdon square, near Bleecker street, New York city. The Hooker Company's office is at 25 Pine street. To get the goods from the bonded warehouse the truckman had to go to the warehouse and present his papers to the customs man, and the whole operation in getting the goods from the warehouse would necessarily take some time, and it would take about half an hour to go with the truck from the Hooker Company's office to the warehouse. The witness said that after the truckman left the office with the permit and truck, the truckman called him up about two-thirty in the afternoon and had a conversation with him. This conversation was excluded, but the witness stated that

after this conversation he called up the pier of the steamship company and also called up Mr. Pohanka and had a conversation with him, and that he told Mr. Pohanka that the truckman was in line and could not make the delivery and asked Mr. Pohanka to get an extension of the permit for another day, and that after a while Mr. Pohanka came back to the 'phone and told him he could not get any extension of the permit. The witness then said that he called up the pier and got the receiving clerk of the steamship *Edgehill* on the telephone and had a conversation with him, but this conversation was likewise excluded by the court. The witness testified as to the route the truck would take going from the warehouse to the Twenty-third street ferry, and so over to Fourteenth street, Hoboken, and that in the afternoon at that period there were usually large waiting lines at the ferry; that this was the usual condition of congestion at that hour. The witness further said that later on the same afternoon, he went over to Mr. Pohanka's office to see him, but he was not in. The next morning, the twenty-fourth, he went again and received another permit for another ship, the *Ansaldo V*, for July sailing, upon which ship the goods were finally shipped.

It is, of course, evident that the defendant was entirely familiar with all the steps necessary to be taken by the plaintiff's assignor in order to transfer the goods from the warehouse to the ship in question, as well as with the time required under traffic conditions, which undoubtedly were known by it, to make the transfer. The defendant was accustomed evidently to procure permits of this character, and the testimony given by Frank Hickey, who issued the permit in question, was to the effect that it was customary to give a permit to a shipper available for two days following the day when the shipper received it. It would seem from his testimony that the custom followed showed the necessity for giving the shipper at least two days to transfer the goods to the ship.

The trial court dismissed the complaint for failure of proof on the part of plaintiff to show that delivery of the goods could not have been made by plaintiff's assignor within the limits of the permit, viz., between ten-thirty A. M. and five P. M. on June 23, 1920. Upon this subject the court said: " The real issue that is presented here, that does rise to the dignity of an issue of fact — that the defendant was negligent in not forwarding the permit for the dock in such time as would be reasonable to enable the shipper, the plaintiff here, or the plaintiff's assignor, to deliver those goods to the dock. That is the issue as the plaintiff presents it. * * * The Court: It seems to me that I have to dispose of this as a matter of law. The fatal weakness in the plaintiff's case,

from my point of view, is the absence of material evidence that could have been given by the truckman as to his movements and his efforts to make the delivery under the permit secured by the defendant,— that is to say, to make delivery on the pier within the limits of the time for which the defendant had obtained permit. That truckman, for aught we know here, may have been indifferent and wholly to blame. \* \* \* I do not think the conditions said to obtain generally at that time with regard to trucking, which may be, for aught we know, a present daily happening and continuing for many years past, helps us in this question here. Assuming that the plaintiff did not, until the morning of the 23rd obtain this permit and know on what ship these goods were to be carried, still it seems to me, both as a matter of fact and law, that there was all of that day within which to make delivery by truck right in the same city,— that is, practically the same city,— inclusive of the ferry over to Hoboken; and I feel that I may not disregard the necessary proof that should be forthcoming from the plaintiff in an action for damages sought to be predicated upon delay. The truck, concededly, was available and on hand on the 23rd, but from that moment on, the case is barren of competent proof to establish that a delivery by that truck on that day could not be effected. We have no evidence in this case, it seems to me, to justify a finding that the permit did not reach the plaintiff, or plaintiff's assignor, in time to make delivery to the specified ship on that day. Plaintiff had until five o'clock of that day to effectuate delivery, the permit having been received at ten thirty A. M. Because of the absence of proof here to show that it was impossible to make that delivery on that day, I think the case must be disposed of as a matter of law, and the motion to dismiss must be granted."

In my opinion the dismissal of the complaint was error. The truckman was not called as a witness. He had left the employ of the trucking company, and his whereabouts was unknown. Failure to show what efforts he made to deliver the goods seemingly was the chief reason for the dismissal. But without his testimony, I think there was sufficient evidence to require the submission to the jury of the question of defendant's negligence.

Respondent calls attention to the fact that the only function of the permit was to authorize the actual leaving of the merchandise at the pier alongside the steamship. It had nothing at all to do with getting the goods from the warehouse, and so the respondent argues that the plaintiff's assignor was free to get the goods out of the warehouse at any time before June twenty-third; that it waited at its own risk. In answer to this, appellant says that such a course

would not be practical or businesslike; that plaintiff's assignor did not know until June twenty-third what ship the goods were going in, or what pier they were going from, and that it would have been a very foolish thing without such knowledge to get the merchandise out of the warehouse and truck it around until the permit should arrive. All this, it seems to me, was for the consideration of the jury upon the question of defendant's negligence. I think the evidence above set forth in regard to the furnishing of this permit by the defendant and the efforts of the plaintiff under it on the day in question is sufficient to entitle the plaintiff to have submitted to the jury the question as to whether the failure of the plaintiff to get the goods shipped on June twenty-third was due to the negligence of the defendant in failing to procure the permit within a reasonable time before its expiration.

Upon this question, I think the court erroneously excluded the letter written by Mr. Colbert, the defendant's general traffic manager, which contained a statement that the failure to make shipment of the goods in question during June was due to conditions entirely beyond plaintiff's control. In my opinion, this is an admission against defendant's interests which was material upon the question of negligence. It might reasonably be found that it was written by defendant for the purpose of preventing damage to plaintiff through defendant's negligence, and so was part of the transaction. (*McCotter* v. *Hooker*, 8 N. Y. 497; *Maller* v. *Long Island R. R. Co.*, 122 App. Div. 463; *Schmerler* v. *Barasch*, 63 Misc. Rep. 267; *Stecher Lithographic Co.* v. *Inman*, 175 N. Y. 124; *Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95 id. 274, 284.)

It was also error for the trial court to exclude the statement of Pohanka to Esler on June twenty-fourth of the message from the defendant's credit department. It appears that upon receiving the *Ansaldo V* permit, Mr. Pohanka made certain statements which the court excluded and plaintiff excepted. Appellant contends that the question was designed to show that Pohanka had stated that it would be all right and that the credit would be good if the goods were shipped by the *Ansaldo V*.

This evidence was excluded upon the assumption that it was an attempt to alter and extend the terms of the credit, but clearly that was not its purpose. While the express company could make no admission or statement which would alter or extend the credit, so as to bind the consignee, it was within its power to agree with the Hooker Company that in consideration of the waiver by the latter company of its claim for damages resulting from the express company's negligence and the shipment of the camphor by the *Ansaldo V*, the express company would pay the amount of the

credit.    The testimony excluded tended to establish such agreement and, under the authorities above cited, Pohanka's statements made with reference to the transaction were competent evidence against the defendant.

The judgment should be reversed upon the law and a new trial granted, with costs to the appellant to abide the event.

KELLY, P. J., RICH, JAYCOX and KELBY, JJ., concur.

Judgment reversed upon the law and a new trial granted, with costs to the appellant to abide the event.