■ JOSEPH LOSCHIAVO et al., Appellants, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant, and NATIONAL AIRLINES, INC., Respondent. — In a negligence action to recover damages for personal injuries, etc., the plaintiffs appeal from a judgment of the Supreme Court, Kings County (Bernstein, J.), dated February 21, 1980, in favor of defendant National Airlines, Inc., upon a jury verdict. Judgment affirmed, without costs or disbursements. This is an action to recover damages, *inter alia,* for personal injuries sustained by plaintiff Joseph Loschiavo when he was disembarking from an aircraft owned and operated by defendant National Airlines, Inc. Mr. Loschiavo contended that while he was walking through a corridor, known as a "jetway", from the aircraft to the terminal building, he tripped upon a raised carpet divider and was thereby caused to fall and sustain injury. The question at the trial was whether the divider constituted a dangerous and defective condition and, if so, whether defendant National had actual or constructive knowledge thereof. After plaintiff fell in the corridor, a Mr. Valanski, who was employed by National as its "ramp service agent", came to his assistance. The only issue raised on appeal is the claim that the trial court erred in ruling inadmissible, as direct proof that defendant National had actual notice of a dangerous condition, a certain statement allegedly made by Valanski to plaintiff to the effect that other persons had tripped and fallen at the place where plaintiff fell. It is the long-settled law of this State that an oral or written statement made by an agent may be received in evidence against his principal under the admissions exception to the hearsay rule only if it was spoken or written within the scope of authority of the agent to speak or write for his employer (Richardson, Evidence [Prince, 10th ed], § 253; Fisch, New York Evidence [2d

ed], § 800; McCormick, Evidence [2d ed], § 267). Although often criticized, the rule that the declaration of an agent is inadmissible against his principal as an admission unless it was within the scope of the agent's authority to make it, was reaffirmed, by the Court of Appeals as recently as 1974 in the case of *Kelly v Diesel Constr. Div. of Carl A. Morse,* (35 NY2d 1, 8). In 1980, in *Brusca v El Al Israel Airlines* (75 AD2d 798), our dissenting brethren in the case at bar joined in a unanimous Bench of this court which recognized the rule but found that, in that case, the statements were made within the scope of the agent's authority to speak for his principal. Whatever our views as to the merits or demerits of the requirement that an agent be authorized to make statements on behalf of his principal before those statements will be received against the principal as admissions, we are constrained by considerations of *stare decisis* to follow the recent pronouncements of the Court of Appeals and of this court on the subject. The testimony established that Mr. Valanski's duties as a gate agent involved meeting flights, assisting passengers in embarking and debarking from aircraft and reporting accidents and dangerous conditions *to his superiors.* It was not his job to discuss prior accidents with passengers or the general public. Accordingly, proof of the alleged statement of Valanski did not qualify for admission into evidence against his employer as an admission. The statement in question, made subsequent to plaintiff's injury, was also not admissible on plaintiff's direct case against defendant National on the theory that it was made as part of the *res gestae* of the accident. The term *res gestae* has been rightly criticized because of its vagueness and imprecision (Fisch, New York Evidence [2d ed], § 1003; Richardson, Evidence [Prince, 10th ed], § 279; McCormick, Evidence [2d ed], § 288). Generally, today the term *res gestae* is considered to encompass the following four different conceptual exceptions to the hearsay rule: (1) declarations of present bodily condition, (2) declarations of present mental states and emotions, (3) excited utterances and (4) declarations of present sense impressions (see McCormick, Evidence [2d ed], § 288; Fisch, New York Evidence [2d ed], §§ 995, 997, 1000, 1002; cf. Proposed Code of Evidence for the State of New York, § 803, subds [1]-[4]). The alleged statement of Valanski falls within none of these recognized exceptions to the hearsay rule. It does not concern bodily condition or present mental state. It was not an excited utterance since it was not a spontaneous response to a startling event. It was not a declaration concerning a present sense impression because narratives of past events which merely relate to the event which is being perceived by the declarant lack the contemporaneousness required for admission into evidence (Commentary, Proposed Code of Evidence for the State of New York, § 803, p 178; McCormick, Evidence [2d ed], § 298). Moreover, the theory that so-called *"res gestae"* statements of an agent should be admissible against his principal is based upon the rationale that those statements serve to explain the acts of the agent upon which the liability of the principal is to be predicated (2 Jones, Evidence [6th ed], § 10:15). To be admissible against a principal as part of the *res gestae,* the declarations of the agent must be contemporaneous with the event in issue, made in, and as a part of the business entrusted to the agent, and calculated to unfold its nature and characterize its action so that acts and declarations combine to form one transaction (29 Am Jur 2d, Evidence, § 725; *Packet Co. v Clough,* 87 US 528, 540-542; *Luby v Hudson R. R. Co.,* 17 NY 131; *Golden v Horn & Hardart Co.,* 244 App Div 92, affd 270 NY 544; *Vadney v United Traction Co.,* 188 App Div 365; *Molino v City of New York,* 195 App Div 496). The statement sought to be admitted in the case at bar is not of that sort. Plaintiff does not predicate National's liability upon the action or inaction of Valanski. Rather he seeks to use Valanski's statement to charge National with notice of the condition

alleged to have caused the accident. Accordingly, Trial Term did not err in excluding the testimony in question and the judgment appealed from should be affirmed. Damiani, J. P., Mangano and Cohalan, JJ., concur.

Lazer, J., dissents and votes to reverse the judgment and grant a new trial, with the following memorandum, in which Gibbons, J., concurs: At issue on this appeal is the current viability of the evidentiary rule which renders an agent's out-of-court statement inadmissible against the principal unless the making of the statement fell within the duties for which the agent was employed. I believe it is time to transfer the State's allegiance to the modern view which allows the agent's statement in evidence if it concerns matters lying within the scope of the agency. The underlying facts are mundane. Plaintiff Joseph Loschiavo was an airline passenger who tripped on a carpet divider while walking through the "jetway" ramp which connected the terminal building to the airplane he was leaving. At the trial of his personal injury action, Loschiavo sought to testify that the airline ramp service agent who came to his assistance told him and others at the scene that plaintiff was not the first to have fallen at the same divider, although he was the first to be injured. The trial court sustained objections to such testimony and when the agent subsequently took the stand on behalf of the defense he asserted that no one else had ever tripped or fallen at the site. Having failed before the jury, plaintiffs now focus their appeal upon the exclusion of the agent's purported admission. Under the current New York rule, the out-of-court admissions of agents are permitted in evidence as admissions of the principal if made pursuant to authority to speak on behalf of the principal and during the course of the performance of the agent's duties. Under this "speaking agent's" exception to the hearsay rule (see 4 Wigmore, Evidence, § 1078, n 1), which has been in vogue in this State for a considerable time (see *Kelly v Diesel Constr. Div. of Carl A. Morse,* 35 NY2d 1; *Spett v President Monroe Bldg. & Mfg. Corp.,* 19 NY2d 203; *Stecher Lithographic Co. v Inman,* 175 NY 124; *Matter of Anthus v Rail Joint Co.,* 193 App Div 571, affd 231 NY 557), a declaration made by an agent without authority to speak (*Taylor v Commercial Bank,* 174 NY 181) or while not engaged in performing his duties (*State Bank of Brocton v Brocton Fruit Juice Co.,* 208 NY 492) or after the agency has terminated, is not an admission receivable against the principal (*Stecher Lithographic Co. v Inman, supra*). The current rule has its derivation in agency rather than evidentiary principles, for admissibility depends "upon the authority to be attributed to the agent in the specific case", which in turn depends "on the nature of the business with reference to the degree of responsibility and authority attributable to the particular person" (1 Greenleaf, Evidence [16th ed], ch 17, § 184 c, p 309). The speaking agent's exception is venerable in origin (see, e.g., *Biggs v Lawrence,* 3 Term Rep 454; see, also, collected cases, 1 Phillips, Evidence, ch 8, § x, subd 3, n 141, pp 508-512), and in the early days the only escape from its harshness lay in the claim that the statements were part of the *res gestae.* Thus, the holding in *Fairlie v Hastings* (10 Vesey 123), that where a party was bound by the act of his agent, the declarations of the agent which qualified or affected that act could be proved against the principal — not as admissions but as part of the *res gestae,* which in this context meant the "act authorized to be done" (see 1 Greenleaf, Evidence [16th ed], ch 17, § 184 d, n 2, p 310). Under this theory, the agent's declarations were offered not for their truth (*Fairlie v Hastings, supra,* p 123, n [a]) but as operative facts accompanying and elucidating the agent's activities on behalf of the principal. Such declarations were admissible as "original evidence * * * the representation or statement of the agent in such cases being the ultimate fact to be proved, and not an admission of some other fact" (1 Phillips, Evidence, ch 8, § x, subd 3, p 507). This rationale for admissibility (i.e., the agency relation-

ship, 1 Greenleaf, Evidence, § 184 c; Phillips, Evidence, ch 8, § x, subd 3, p 507; Story, Agency [8th ed], §§ 134-137; 2 Starkie, Evidence [5th Amer ed], pp 22-23) subsequently was adopted in this State (see, e.g., *Thallhimer v Brincker-hoff*, 4 Wend 394; *Bank of Monroe v Field*, 2 Hill 445; *Luby v Hudson Riv. R. R. Co.*, 17 NY 131; *Golden v Horn & Hardart Co.*, 244 App Div 92, affd 270 NY 544; *Kasper v Buffalo Bills of Western N. Y.*, 42 AD2d 87). For the Federal judiciary, the doctrine of implied authority soon supplied an additional avenue of escape from the traditional rule. In *Martin v Savage Truck Line* (121 F Supp 417) a truck driver's statements in a negligence action against his employer were admitted as a matter of public policy when the court found an implied agency to truthfully relate the facts concerning the accident. In rejecting the argument that the driver's agency existed solely to operate the truck, the court observed that under the old rule (p 419): "It is almost like saying that a statement against interest in the instant case could only have been made had the truck been operated by * * * the board of directors". On similar facts, *Grayson v Williams* (256 F2d 61) held that admissions made by an agent concerning the subject matter of his employment were binding on the principal even if made without authority. The *Grayson* court explained its rationale by quoting Wigmore's criticism of the traditional rule (p 66): " 'and yet it is absurd to hold that the superintendent has power to make the employer heavily liable by mismanaging the whole factory, but not to make statements about his mismanagement which can be even listened to in court;**.' 4 Wigmore on Evidence (3d Edition, 1940) § 1078, p. 121, n. 2." But in *Konink-lijke Luchtvaart Maatschappij N. V. v Tuller* (292 F2d 775, 783, cert den 368 US 921), the court observed that "rejecting early post-accident statements of an employee while receiving the employee's considered statements in the courtroom perhaps several years after the event is to give preference to the weaker over the stronger evidence." The *Tuller* court then disregarded the fiction of an implied authority and determined admissibility not on the basis of agency but evidentiary grounds; specifically that there was an adequate indicium of reliability to admit the statement as a hearsay exception, noting, *inter alia*, that the employee's statements were adverse to his own interests, as well as his principal in that it entailed the possible loss of his present employment and impairment of future employment. The *Tuller* theory is now embedded in the Federal Rules of Evidence which provide for the admission of an agent's statement concerning a matter within the scope of the declarant's agency or employment made during the existence of the relationship (see Federal Rules of Evidence, § 801, subd [d], par [2], cl [D]). To the same effect are the Uniform Rules of Evidence (see rule 801, subd [d], par [2], cl [iv]; rule 65, subd [9], par [a]) and the Model Code of Evidence (see rule 508). A large number of States have adopted similar legislation (see 4 Wigmore, Evidence [Chadbourn rev, 1972], § 1078, n 2, p 166, and 1981 Pocket Supplement for States Collected; see, also, Historical Note to Proposed Code of Evidence for the State of New York, § 801, subd [d], par [2]) and the drafters of the newly Proposed Code of Evidence for the State of New York would have us join the trend (see Proposed Code, § 801, subd [d], par [2], cl [D]). The rationale for the Federal Rule (801, subd [d], par [2], cl [D]) provides a sufficient basis for reliability. "The agent is well informed about acts in the course of the business, his statements offered against the employer are normally against the employ-er's interest, and while the employment continues, the employee is not likely to make the statements unless they are true. Moreover, if the admissibility of admission is viewed as arising from the adversary system, responsibility for statements of one's employee is a consistent aspect" (McCormick, Evidence [2d ed], § 267, p 641; see, also, Advisory Comm Note to Federal Rules of Evidence,

§ 801, subd [d], par [2]). Not only is this reasoning sound, but empirical evidence belies the old rationale for excluding an employee's unauthorized statements, i.e., that an employee would seek to pass blame onto his employer. Indeed, the widespread availability of liability insurance makes the need for employee self-protection rare, and, if anything, it is likely that modern-day employees will seek to protect their employers. " 'To continue the old restriction would be to immunize all principals from statements made by their working agents and employees who transact their business and who get into the accidents' " (*Nobero Co. v Ferro Trucking,* 107 NJ Super 394, 404). In this State, dissatisfaction with the old rule is reflected in current confusion over the significance of holdings like *Bransfield v Grand Union Co.* (17 NY2d 474) and *Brusca v El Al Israel Airlines* (75 AD2d 798). In those cases the contemporaneous declarations of a store manager and a construction foreman were admitted against the principals even though they were not part of the *res gestae.* But if *Bransfield* and *Brusca* could be read to imply that managerial capacity constitutes an unstated basis for admissibility, they seem to contradict *Golden v Horn & Hardart Co.* (244 App Div 92, affd 270 NY 544, *supra*), which excluded an assistant manager's statement. *Bransfield, Brusca* and *Golden* "do not merely illustrate fluctuation of doctrine and the vicissitudes of judgment" (*Bing v Thunig,* 2 NY2d 656, 663); rather they demonstrate the inherent incongruity of basing admissibility on the scope of an agent's authority to speak. Agents are rarely employed to make damaging statements on behalf of their employers, and judicial efforts to authorize the admission of such statements while pretending adherence to the outmoded traditional stricture constitute an intellectually unacceptable method of joining the modern rule to the constraints of *stare decisis.* Although I am aware that the traditional rule was reaffirmed in 1974 (*Kelly v Diesel Constr. Div. of Carl A. Morse,* 35 NY2d 1, *supra*), I do not believe that departure from a common-law rule which is rooted more securely in history than in contemporary realities should be further delayed in order to encompass some greater lapse of time prior to change. *Stare decisis* is "intended, not to effect a 'petrifying rigidity,' but to assure the justice that flows from certainty and stability. If, instead, adherence to precedent offers not justice but unfairness, not certainty but doubt and confusion, it loses its right to survive" (*Bing v Thunig,* 2 NY2d 656, 667, *supra*) and it becomes the duty of the court to reconsider such a rule of law. Here, the ramp agent had general authority to supervise the jetway area where the accident occurred, assist disembarking passengers, and report accidents (whether injuries occurred or not) and potential hazards to his principal, defendant National Airlines. His admissions should be permitted in evidence because they concerned matters within the scope of his employment and were made during the course of that employment. Therefore, I would reverse and grant a new trial.