Chief Judge Breitel.
In a negligence action, a subcontractor’s employee recovered a judgment for $43,000 for personal injuries sustained by him. The general contractor and a negligent hoist company were jointly cast in judgment. On its cross claim the general contractor, Diesel, recovered a judgment for the full amount against the negligent hoist company, White. The hoist company appeals. The principal issue is whether a *4 general contractor held liable to an injured subcontractor’s employee under sections 240 and 241 of the Labor Law is entitled to indemnification or contribution from a hoist company whose negligence, in whole or in part, caused the accident. The right is asserted under common-law principles and not by virtue of an indemnification covenant or agreement.
The issue of liability was tried separately before a jury which, on a general verdict with interrogatories, found only the hoist company liable to plaintiff and that the accident was due solely to the hoist company’s negligence. The court, however, granted judgment for plaintiff against the general contractor, as a matter of law, based on the finding of negligence solely against the hoist company. The amount of damages was stipulated, and the trial court, without a jury, held that the general contractor was entitled to full indemnification from the hoist company. The Appellate Division affirmed.
There should be an affirmance. The general contractor, Diesel, was entitled to contribution or indemnification from the hoist company, White. By its verdict, the jury, found White, among all defendants, to be solely responsible for the accident. Diesel was liable by statutory imputation of White’s negligence. The older rule that sections 240 and 241 deprived an owner or general contractor, regardless of where the fault lay, of the right to contribution or indemnification for construction, maintenance, excavation, or demolition accidents is no longer applicable. This is so in light of the universality of insurance and current doctrine favoring apportionment of damages among joint tort-feasors.
Plaintiff Harold Kelly was a steamfitter employed by a subcontractor, Raisler Corporation, in the construction of a 40-story office building in Manhattan. He was injured in July, 1967 when the personnel elevator hoist on which he and others were descending fell 20 floors to the bottom of the shaft. The hoist had been furnished for the use of all construction workers and tradesmen. Kelly had ridden it daily for some six months.
Diesel, as general contractor, undertook to furnish, maintain and operate the hoist. By various intermediate subcontracts it was White’s responsibility to supply and maintain the hoist, particularly its brakes and other safety devices. White *5 inspected the equipment before installation and regularly thereafter every one or two weeks.
As noted, after a trial on the liability issue alone, the jury returned a general verdict in favor of plaintiff Kelly against White alone, and by answers to interrogatories, found that the malfunctioning of the hoist was caused by a “ defective brake ”, and a “ defective bottom final limit switch ”, due to improper maintenance by White. The trial court set aside the verdict in favor of Diesel and directed a verdict against it as a matter of law. The court held that improper maintenance by the hoist company White must be imputed to the general contractor, in light of its “ nondelegable duty ” to provide a safe place to work. The duty derives from sections 240 and 241 of the Labor Law, as they read at the time of the accident in 1967. The court then went on, by stipulation of the parties, to decide the general contractor’s cross claim against the hoist company White and awarded it full indemnification under the rule of Dole v. Dow Chem. Co. (30 N Y 2d 143).
Sections 240 and 241 have been unif ormly construed to impose nondelegable duties on owners and general contractors for breach of which they are deemed primary or “ active ” tortfeasors and are denied indemnification from joint tort-feasors. This is so even if the joint tort-feasor had been, in fact, solely responsible for the accident and indemnification would otherwise lie at common law (Rufo v. Orlando, 309 N. Y. 345, 350; Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N. Y. 412, 421-423; Walters v. Rao Elec. Equip. Co., 289 N. Y. 57, 61-62; Tully v. Roosevelt Props., 34 A D 2d 786). It was said that the rule accorded with legislative purpose not merely to create a fund for the injured workman’s recovery, but to prevent accidents. This sanction was thought necessary to compel a high standard of care (see Rufo v. Orlando, 309 N. Y. 345, 350-351, supra). Notably, and quite inconsistent with this attributed purpose, the liability might still be shifted by insurance or express indemnification agreements (see Semanchuck v. Fifth Ave. & 37th St. Corp., supra).
Were the rule last discussed retained, the doctrine of Dole v. Dow Chem. Co. (supra) would not permit Diesel a right of contribution or indemnification from White. Dole recast the analysis and terminology categorizing active and passive tort *6 feasors and primary and secondary liability. It did not alter or detract from the right of one held only vicariously liable to obtain full indemnification from the party wholly responsible for the accident (see Rogers v. Dorchester Assoc., 32 N Y 2d 553, 564-566). Nor would it alter the rule of Semanchuck and like cases which barred the shifting of the vicarious liability, described as “ nondelegable ”, imposed by sections 240 and 241.
There is no good reason to continue the artificial policy involved in denying an owner or contractor, liable vicariously only under the applicable sections of the Labor Law, from obtaining indemnification under common-law principles, or, in a proper case, contribution under the doctrine in Dole v. Dow Chem. Co. (supra). The owner or general contractor almost universally, if not indeed universally, covers his liability, primary or secondary, with liability insurance. In most instances he requires a covenant of indemnification from his subcontractors or suppliers, which the courts have always accepted as enforceable and not a violation of public policy. It is therefore no longer true, if' it ever were, that making the owner or general contractor inescapably liable provides an added incentive for safety standards on building projects.
As for the distribution of costs, the project as a whole will inevitably bear the cost of all insurance premiums covering accidents on the project. The only question will be which insurance carriers will pay and how much. The present litigation, like so many similar ones in the past, has had little to do with raising safety standards and nothing to do with the recovery received by the injured plaintiff. The disputes are simply between or among the carriers for those liable by statute or at common law for fault-caused accidents on the project.
Sections 240 and 241, even if interpreted not to bar common-law indemnification or contribution, still perform a most important function. Moreover, that function accords precisely with their language. The statutes mandate first instance liability on the owner or general contractor so that, with respect to the injured workman, the owner or general contractor cannot escape liability for accidents caused by his subcontractor or supplier. All that would be changed by applying the Dole-Dow doctrine uniformly is that, under familiar common-law principles, full indemnification can be recovered from the actor who caused the *7 accident (the active tort-feasor), and, where the cause is shared, contribution under the Bole-Bow doctrine.
It ought also to be true that if each insurer knew that its insured would be ultimately cast in judgment for the accidents the insured causes, the insurer would be more insistent that its insured maintain the safety standards necessary to avoid accidents.
Before leaving the subject it would be useful to observe that the inevitable limited accuracy of terminology has caused much of the trouble in this area of the law. In the first instance, the extension of active-passive terminology from the rules governing active tort-feasors, who were liable to those only vicariously liable for the harm done by the active tort-feasors, caused immeasurable trouble in this State (see Bush Term. Bldgs. v. Luckenbach S. S. Co., 11 A D 2d 220, 223-229, revd. 9 N Y 2d 426). Thanks to Dole v. Dow Chem. Co. (supra) that unwise extension has been properly laid to rest. In the second instance, the use of the term “ nondelegable ” was applied properly not to duties that could not be delegated but to liabilities arising from the delegated duties if breached. The fact and the law always was that the duties could be delegated but that first instance liabilities which arose from breach of the duties could not be delegated as against persons injured by the breach of the duties. And, of course, in reason, one who delegated a duty to another should have continued to be entitled to recover from the delegate for the harm sustained by him because of the delegate’s breach of duty, namely, having been cast in judgment as vicariously liable. In classic and correct terminology, the one who should pay ultimately for his actual fault is primarily liable. The one who must pay because of first instance liability to third parties but who ought to be able to recover from one guilty of actual fault, is secondarily liable (Bush Term. Bldgs. v. Luckenbach S. S. Co., 11 A D 2d, at p. 224, supra; Restatement, Restitution, §§ 93-95).
Finally, it is contended by White that certain statements allegedly made by Diesel’s construction superintendent and incorporated in an elevator inspector’s report were in effect admissions by Diesel and improperly excluded at trial. White asks either that a new trial be ordered or that there be a remand for reapportionment of damages on Diesel’s cross claim in light *8 of the alleged admissions by Diesel. Excluded by the court were those portions of the report which contained a statement by the superintendent to the inspector that 22 men were on the hoist at the time of the accident and the inspector’s opinion that overloading was one cause of the accident. The rated capacity was 20 men, and there had been conflicting testimony at trial on the number of men on the hoist.
The elevator inspector’s accident report was admissible, in the main, as a public record, and this is not disputed (see CPLR 4520). The statement by Diesel’s superintendent, however, having been made by one not in the same employment as the entry-maker, namely, the inspector, had to qualify independently for admission under a recognized exception to the hearsay rule (see Richardson, Evidence [10th ed.], § 299; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 4518.11, 4520.02). The statement could not qualify under the exception for admissions, unless it was first shown that the superintendent was authorized by his employer to make admissions (see Richardson, op. cit., supra, § 253, and cases cited). There is nothing to suggest that he had such authority.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Jasen, Gabbielli, Jones, Wachtleb, Rabin and Stevens concur.
Order affirmed.