■ ROBERT KAPPEL, Respondent, v FISHER BROS., 6TH AVE. CORP., et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents. AKRON WRECKING CORP., Third-Party Defendant-Appellant.—In a negligence action to recover damages for personal injuries sustained during the demolition of a building, third-party defendant Akron Wrecking Corp., and defendants third-party plaintiffs Fisher Bros., 6th Ave. Corp. and Fibro Construction Corp. appeal from an interlocutory judgment of the Supreme Court, Nassau County, entered October 10, 1974, after a jury trial on the issue of liability only, which (1) is in favor of plaintiff against defendants third-party plaintiffs on the issue of liability, (2) directs an assessment of damages and (3) adjudges that defendants third-party plaintiffs shall have judgment against third-party defendant for any and all damages which may be assessed against them. Interlocutory judgment reversed, on the law, without costs, and complaint and third-party complaint dismissed. The findings of fact implicit in the jury verdict are affirmed. Plaintiff, an employee of Akron Wrecking Corp. (Akron) was injured while working as a "burner" in the demolition of the Zeigfeld Theatre in New York. The theatre was owned by defendant Fisher Bros., 6th Ave. Corp. (Fisher). Fibro Construction Corp. (Fibro), a wholly owned subsidiary of Fisher, had contracted with Akron for the demolition of several buildings, including the Zeigfeld Theatre. Plaintiff had worked on the demolition of the theatre for three or four months prior to the accident. By that time the steel framework of the lower floors, the orchestra, concession areas and stairwells had been stripped of all masonry, cement arches and stairs, which materials had been dropped into the basement of the building. At the time of the accident, plaintiff and his helper, working in conjunction with a coworker and his helper, were in the process of demolishing the balcony. Specifically, they were "dropping the balcony arches into the basement". These arches were flat concrete slabs which formed the seating platforms, "about six inches thick, about 24 inches steep and 24 inches down". They were attached to the steel beams, which were 10 feet apart, by connecting rods. These connecting rods had been exposed previously by other fellow employees who, using jackhammers, had created a "chase" or cut in the concrete along the edge of the steel beams. Plaintiff, using an acetylene torch, cut through the connecting rods at one steel beam while his coworker simultaneously burned through the rods at the next steel beam. When so cut, the arch dropped to the basement. When the last such arch was dropped by plaintiff, he was struck in the head by some object, causing him to fall backward from the steel beam on which he was standing to the basement below, a distance of some 50 feet. While plaintiff did not know what struck him, his helper testified that it was a length of two-inch pipe which had come up from the space where the arch had been. Plaintiff brought suit against the owner and Fibro, its wholly owned subsidiary. The same three men were principals of both corporations. At the close of plaintiff's case, the trial court denied a motion by defendants to dismiss the complaint for failure to make out a prima facie case, on the

ground that a jury question was presented as to whether they had complied with the requirements of section 241 of the Labor Law by providing "adequate protection and safety to the persons employed therein or lawfully frequenting such places." However, the trial court also denied a motion by Akron to dismiss the third-party complaint on the ground that there was not enough testimony to create any issue as to whether defendants were in control of the work. The trial court stated that the case would be submitted to the jury only on the issue of whether defendants had provided plaintiff with a safe place to work. As noted, the jury returned a verdict against defendants; the trial court directed judgment over in their favor as third-party plaintiffs against third-party defendant. With the issue of defendants' control thus out of the case, there was no basis for finding them liable under section 241 of the Labor Law. This court has indicated on numerous occasions that an owner or general contractor cannot be held to answer in damages under the applicable sections of the Labor Law absent any control, supervision or direction of the work by it (see, e.g., *Cangiano v Lo Bosco & Son*, 23 AD2d 860; *Kajowski v Irvico Realty Corp.*, 37 AD2d 991; *Murray v Hofstra Univ.*, 40 AD2d 1018; see, also, *Wright v Belt Assoc.*, 14 NY2d 129). In the last-mentioned case, the Court of Appeals (per Scileppi, J.) said (pp 134–135): "What is involved is the distinction between the responsibilities imposed by section 240 of the Labor Law on a 'person employing or directing another to perform labor' and the obligations cast on 'contractors and owners' under former section 241 of the Labor Law. We were confronted with this problem in *Thomas v New York City Housing Auth.* (9 NY2d 625) and again in *Conte v Large Scale Development Corp.* (10 NY2d 20), where it was held that the rules of the Board of Standards and Appeals, promulgated pursuant to subdivision 6 of former section 241 of the Labor Law, could not operate to shift the responsibility fixed on the employer by section 240 of the Labor Law to the owner or general contractor *absent the assumption of control by the latter.* We noted in *Conte* the difference between the nature of the obligations imposed on owners and general contractors by former section 241 to keep safe open common areas and those imposed by section 240 to safeguard areas created by them and intimately connected with their work" (emphasis supplied). Speaking on the distinction referred to in *Wright,* this court, in *Naso v Wates & Co.* (21 AD2d 679, 680), noted that "Broadly, the distinction is that the general contractor and the owner are responsible for the safe condition of the commonly-used portions of the premises, but that the subcontractors are responsible for supplying safety devices in the areas created by and intimately connected with their work." This statement was specifically approved by the Court of Appeals in *Bidetto v New York City Housing Auth.* (25 NY2d 848). At bar, the type of specialized work being done by plaintiff, and the spot where he was working at the time of the accident, suggest no other conclusion but that responsibility must fall on the subcontractor. There was no basis for the jury finding that defendants were liable. The case of *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.* (35 NY2d 1), relied upon by the dissenters, is distinguishable. In *Kelly,* the accident occurred on a personnel elevator hoist which had been furnished for the use of all construction workers and tradesmen. Nothing in the language of the *Kelly* opinion suggests that the principles enunciated by the above-cited authorities are no longer applicable. Hopkins, Acting P. J., Cohalan and Munder, JJ., concur; Christ and Brennan, JJ., dissent and vote to affirm on the authority of *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.* (35 NY2d 1).