**Rita ROBINSON, individually and as Administratrix of the goods, chattels and credits that were of Joseph Robinson, Deceased, Plaintiff-Appellee,**

v.

**Rubin SHAPIRO, Harold Schneider, Irving Newman, Samuel Greenberg and Julius G. Fishman, doing business as Village Towers Company (a partnership), Defendants-Appellants.**

**Harold SCHNEIDER, doing business as Village Towers Company (a partnership), Third-Party Plaintiff-Appellant,**

v.

**WASOFF CONTRACTORS, INC. and Modern Sheet Metal, Inc., Third-Party Defendants-Appellees.**

**No. 15, Docket 80–7158.**

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1980.

Decided March 23, 1981.

Marshall C. Berger, New York City (Thomas Gelb, Weisman, Celler, Spett, Modlin & Wertheimer, Lewis I. Wolf, Benjamin Metviner, New York City, of counsel), for defendants-appellants and third-party plaintiff-appellant.

Martin S. Rothman, New York City (Perry Pazer, David Epstein, Pazer & Epstein, P. C., Seligson, Rothman & Rothman, New York City, of counsel), for plaintiff-appellee.

William F. Larkin, New York City (Mona C. Engel, F. V. Mina, New York City, of counsel), for third-party defendant-appellee Wasoff Contractors, Inc.

Douglas E. McKeon, New York City (Kathryn Deborah Nealon, Law Offices of William F. O'Connor, Peter M. Pryor, New York City, of counsel), for third-party defendant-appellee Modern Sheet Metal, Inc.

Before OAKES and MESKILL, Circuit Judges, and CARTER, District Judge.*

MESKILL, Circuit Judge:

In this diversity action, Village Towers Company (Village Towers), a partnership owning an apartment building in New York City, appeals from a judgment of the United States District Court for the Southern District of New York, 484 F.Supp. 91, Lasker, J., entered on a jury verdict awarding plaintiff Rita Robinson $1,180,000 for the wrongful death and conscious pain and suffering of her late husband, Joseph, both New Jersey residents. Village Towers raises a host of objections to nearly every facet of the trial below, arguing that its claims against the third-party defendants were improperly removed from the jury, that certain evidentiary rulings were erroneous, that the charge was improper, and that damages were illegal and excessive. For the reasons stated below, we affirm the judgment holding Village Towers liable, but reduce the amount of the damages to eliminate the award for loss of consortium.

## BACKGROUND

The facts surrounding the accident in question are largely undisputed. In early 1977, Village Towers contracted with Wasoff Contractors, Inc. (Wasoff) for the installation of a new heating system and chimney for its 19-story apartment building at 15 Charles Street in Greenwich Village. Wasoff subcontracted the chimney work to Modern Sheet Metal, Inc. (Modern), which completed the job by March 1977. Nearly ten months after the job was finished, portions of the chimney blew down during a severe windstorm and fell on the roof of the apartment building's adjoining one-story garage. The next day, Village Towers called Wasoff, which had guaranteed the work for one year; Wasoff, in turn, contacted its subcontractor, Modern, and Modern dispatched a three-man crew, led by the decedent, to clean up the debris and appraise the damage.

A clear description of the premises is essential to understanding the events that followed. Around the edge of the garage roof was a brick "parapet wall" approximately fourteen inches thick and three to four feet high. See plaintiff's photographic exhibit 2, Appendix 1. Along the front of the garage to the edge of the building, an iron fence extended above the parapet wall an additional three feet. A metal staircase led from the alleyway at ground level to a gap in the parapet wall. In this gap was a large iron "gate," fashioned in the same style as the iron fence and extending a foot above the fence, or about four feet higher than the parapet wall. This "gate" was not hinged; rather, it was wedged into the gap with wooden shims and tied to the surrounding fence with electrical wire. Thus, the "gate" could be "opened" only by taking it down.

The Modern crew arrived around 9:15 a. m. on January 9 and, after a brief discussion between Robinson and John Rendo, the building superintendent, they began work. To get onto the roof, the Modern workmen had to walk up the metal staircase to the "gate" and, using the "gate" for support, hoist themselves onto the parapet wall. Then they walked along the parapet wall to the building's side, where they stepped through an opening in the fence onto the

* Hon. Robert L. Carter, United States District Judge for the Southern District of New York, sitting by designation.

garage roof. During the course of the day, officers of Modern visited the premises and reached the roof in the same manner. Around 3:00 p. m., the crew decided to stop for the day because of inclement weather. Robinson was the last to leave. As he was using the gate to step down onto the staircase, the gate gave way and Robinson fell to the bottom of the stairs with the gate on top of him. Robinson was taken to a nearby hospital, where he died three days later as a result of head injuries sustained in the fall.

Rita Robinson, Joseph's widow and administratrix of his estate, brought a wrongful death action against Village Towers for loss of support and services and loss of consortium, and a survival action for her husband's pain and suffering. Mrs. Robinson alleged that Village Towers breached its common law duty to maintain reasonably safe premises for its invitees and breached its statutory duty as owner of the premises to provide workmen with a safe place to work, pursuant to sections 240 [1] and 241(6) [2] of New York's Labor Law. Village Towers impleaded Wasoff and Modern, claiming that Wasoff was also under a statutory duty to provide a safe place to work and contending that Village Towers was entitled to contribution from the third-party defendants for any sums awarded to the plaintiff. Thereafter, the plaintiff amended her complaint to assert a claim against Wasoff for negligence and for violation of its nondelegable statutory duty under §§ 240 and 241(6) to provide a safe place to work for employees of its subcontractors.

At trial, much of the evidence concerned the parties' knowledge of and responsibility for the dangerous gate. Samuel Greenberg, an owner of Village Towers, testified that a Village Towers maintenance man had been responsible for reinstalling the fence and gate after the initial construction of the chimney in early 1977. James Castro, a member of Robinson's crew on the day of the accident, testified that the gate appeared to be locked and securely fastened to the parapet wall. Harold Shictman, an officer of Modern who also climbed onto the roof, testified that the gate seemed "sturdy enough." Craig Wasoff, an officer of Wasoff, also visited the site, but could not recall how he gained access to the garage roof. Finally, Castro testified that Robinson had told him prior to the accident that Superintendent Rendo had forbidden the crew to remove the gate, because Rendo used the roof area as a makeshift pen for his dog, and the resultant opening would allow the dog to escape. Castro testified further that Robinson also had said that Rendo refused to let the crew reach the garage roof through his apartment window because he did not want his rugs soiled.

1. At the time this case was tried, section 240 provided in pertinent part:

§ 240. *Scaffolding and other devices for use of employees*

1. All contractors and owners and their agents in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y.Lab.Law § 240(1) (McKinney 1979). The statute has since been amended, but the change is not relevant to the issues in this case.

2. At the time this case was tried, section 241 provided in pertinent part:

§ 241. *Construction, excavation and demolition work*

All contractors and owners and their agents when constructing or demolishing buildings or doing any excavating requirements:

. . . .

6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The board may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work shall comply therewith.

N.Y.Lab.Law § 241(6) (McKinney 1979). A subsequent amendment, identical to the change made in § 240, see note 1 supra, does not affect the case at bar.

At the close of the evidence, Judge Lasker granted a directed verdict dismissing Village Towers' claims against the third-party defendants, ruling that no reasonable juror could find negligence on the part of Wasoff and Modern. 484 F.Supp. at 93. The court declined, however, to dismiss the plaintiff's complaint against Wasoff, despite its ruling on Village Towers' cross-claims, to "obviate the need for a new trial in the event the Court of Appeals disagreed." *Id.* at 94. In response to special interrogatories, the jury found that both Village Towers and Wasoff had been negligent and that both had violated §§ 240 and 241(6), and awarded damages of $1,180,000, representing $750,000 for loss of support and services, $400,000 for loss of consortium, and $30,000 for Robinson's pain and suffering. The jury expressly found that the decedent had not been contributorily negligent, and apportioned damages 88 percent to Village Towers and 12 percent to Wasoff. Thereafter, the court granted Wasoff's motion for judgment n. o. v. and set aside the jury verdict finding Wasoff 12 percent responsible for Robinson's death. Judge Lasker pointed out that there was no more evidence of negligence on the plaintiff's claim against Wasoff than there had been on the defendant's third-party claim, and concluded that it was unnecessary under the circumstances to determine whether Wasoff was absolutely liable to the plaintiff under §§ 240 and 241(6) of the Labor Law. Village Towers' motion for a new trial was denied, and it now appeals.

## DISCUSSION

### A. *The Directed Verdict*

New York law, which we must apply in this diversity case, allows full indemnification or proportionate contribution among joint tortfeasors, *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), even where the party seeking indemnity or contribution is held liable for breach of a nondelegable duty, *Kelly v. Diesel Construction*, 35 N.Y.2d 1, 6–7, 358 N.Y.S.2d 685, 315 N.E.2d 751 (1972); *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 564–67, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973); *see also Allen v. Cloutier Construction Corp.*, 44 N.Y.2d 290, 301, 405 N.Y.S.2d 630, 376 N.E.2d 1276 (1978). It is settled, however, that under New York law a party seeking contribution must prove that the party from whom contribution is sought is at least partially responsible for the accident. *Dole v. Dow Chemical Co.*, *supra*, 30 N.Y.2d at 148–49, 153, 331 N.Y.S.2d 382, 282 N.E.2d 288; *Stevens v. Consolidated Edison Co.*, 63 A.D.2d 979, 980, 405 N.Y.S.2d 771 (2d Dep't 1978). In dismissing the third-party claims, the court stated, "Bearing in mind that Village Towers bore the burden of proving negligence on the part of Wasoff and Modern ... no reasonable juror could find, on this evidence, that the failure of the officers of Wasoff and Modern to recognize that the existence and position of the [gate] might be dangerous constituted negligence on their parts." 484 F.Supp. at 93.

Assuming that the district court's finding concerning negligence is legally correct, an issue we will discuss later, the dismissal of the third-party complaint was proper. To the extent that the claims sought contribution based on negligence, the court's finding eliminates the factual predicate necessary for recovery. Moreover, Village Towers is not entitled to contribution solely on the basis of Wasoff's statutory duty under the Labor Law. A party held liable under New York's Labor Law is entitled to "full indemnification ... from the actor who caused the accident (the active tortfeasor), and, where the cause is shared, contribution under the *Dole-Dow* doctrine." *Kelly v. Diesel Construction, supra*, 35 N.Y.2d at 6–7, 358 N.Y.S.2d 685, 315 N.E.2d 751. In the terminology of the *Kelly* Court, "the one who should pay ultimately for his actual fault is primarily liable. The one who must pay because of first instance liability to third parties but who ought to be able to recover from one guilty of actual fault, is secondarily liable." *Id.* at 7 (citations omitted). The district court's ruling, in conjunction with the jury verdict finding the owners negligent, clearly estab-

lished Village Towers as the "primarily liable" tortfeasor whose "actual fault" was fully responsible for the accident. Therefore, even if Wasoff were liable under the Labor Law—a point the district court expressly declined to reach—Village Towers would not be entitled to contribution, but rather would be liable to Wasoff for full indemnification. Thus, absent a showing of negligence on the part of the third-party defendants, Village Towers is not entitled to contribution.

■ Village Towers argues, however, that there *was* sufficient evidence of negligence on the part of the third-party defendants and that removal of this issue from the jury was error. Relying on *Lawton v. Cuba National Bank*, 27 A.D.2d 695, 276 N.Y.S.2d 912, aff'd, 21 N.Y.2d 669, 287 N.Y.S.2d 95, 234 N.E.2d 256 (1967), Village Towers argues in its brief that "these officers of contracting companies with their long experience in proper construction procedures" were in a better position than the owners to realize the potential hazard of the fence. But in *Lawton*, the owner of the premises had no notice of the insecure railing there involved; in this case, Village Towers knew about and indeed created the dangerous condition which caused the accident. Under these circumstances, we think that the owner, not the contractor, "had a better opportunity . . . to examine" the condition. *Lawton v. Cuba National Bank, supra*, 27 A.D.2d at 696, 276 N.Y.S.2d 912.

■ Village Towers next argues that Wasoff's nondelegable duty[3] to provide a safe place to work, N.Y.Lab.Law § 241(6), imposed upon Wasoff a concomitant duty to inspect the worksite for latent dangers, and that Wasoff's failure in this regard gave rise to common law negligence, which in turn entitled Village Towers to contribution. Even assuming that a party outside the protected class could rely on the nondelegable duty provisions of the Labor Law to impose upon a contractor a duty to inspect, Village Towers' syllogism must fail. The fallacy of the argument is that Village Towers, as owner, was also under a nondelegable duty under §§ 240 and 241(6) to provide a safe place to work, regardless of its actual control. *Allen v. Cloutier Construction Corp., supra*, 44 N.Y.2d at 300, 405 N.Y.S.2d 630, 376 N.E.2d 1276. Thus, if the nondelegable duty provision imposed on Wasoff a duty to inspect, it imposed an equal duty on Village Towers. Village Towers' reliance on *Dullard v. Berkeley Associates Co.*, 606 F.2d 890 (2d Cir. 1979) (applying N.Y.Lab.Law), is misplaced. In that case, a defendant contractor sought indemnity from a third-party defendant subcontractor. In an attempt to avoid third-party liability, the subcontractor claimed that the *plaintiff* had failed to make out a prima facie case against the defendant contractor. This Court rejected the argument, holding that the evidence supported a finding of negligence and that, in any event, the contractor owed the plaintiff a nondelegable duty to provide a safe place to work. 606 F.2d at 893. Thus, *Dullard* holds only that a general contractor may be held liable to a member of the protected class for breach of its nondelegable duty to provide a safe place to work.

■ In the present case, Village Towers seeks a sharing of the burden based upon a sharing of fault; however, absent a showing that the third-party defendants were somehow at fault, Village Towers is not entitled to contribution. We agree with the district court that there was no evidence from which a reasonable jury could con-

---

3. There is some dispute in New York over whether N.Y.Lab.Law § 241(6) imposes absolute liability or merely a "nondelegable duty" upon contractors and owners. In *Allen v. Cloutier Constr. Corp., supra*, 44 N.Y.2d at 300, 405 N.Y.S.2d 630, 376 N.E.2d 1276, the Court characterized the duty as "absolute." However, a subsequent Appellate Division court characterized this statement as "dictum" and held that the statute imposes only a "nondele-

gable duty." *Monroe v. City of New York*, 67 A.D.2d 89, 102, 414 N.Y.S.2d 718 (2d Dep't 1979). For a discussion of the *Allen* and *Monroe* cases, and the distinction between the two kinds of duty, *see 1979 Survey of New York Law, Torts*, 31 Syracuse L.Rev. 433, 436–38 (1980). In light of our agreement with the district court's treatment of the statutory claims, we need not decide this issue.

clude that Wasoff or Modern was negligent in failing to discover or correct the seemingly sturdy gate. Therefore, the third-party claims were properly dismissed.

## B. *The Judgment N.O.V.*

█ The jury found Wasoff liable under the Labor Law, as well as in common law negligence, and apportioned fault of 12 percent to the company. In setting aside the finding of negligence and the apportionment of fault, the court ruled that the plaintiff, like Village Towers, had failed to prove any negligence on the part of Wasoff, and that the apportionment was therefore improper. Village Towers' appeal with respect to this ruling must be rejected for the same reasons set forth in the preceding section.[4]

## C. *The Evidentiary Claims*

█ During the trial, Village Towers unsuccessfully sought to place in evidence the written contract between the owners and Wasoff. On appeal, the owners assert that submission of the contract, which contained a warranty clause, was necessary to rebut Wasoff's contention that on the day of the accident its officer was present out of mere "curiosity." We agree with Judge Lasker that, "[r]egardless of the motives that brought Wasoff's officer to 15 Charles Street on January 9th, the fact remains that the evidence adduced at trial will not support a conclusion that any act or omission attributable to Wasoff constituted negligence which contributed to Robinson's death." 484 F.Supp. at 94. Moreover, the case was submitted to the jury on the theory that Wasoff was a general contractor hired to repair the smokestack. The jury

evidently accepted this fact since it specifically found Wasoff liable under the Labor Law. The court was well within its discretion in concluding that the probative value of the contract was substantially outweighed by the danger of confusing and misleading the jury and unfairly prejudicing Wasoff. *See* Fed.R.Evid. 403. Moreover, in view of the jury's finding that Wasoff was liable under the Labor Law, any error arising out of this evidentiary ruling would be harmless.

█ Village Towers also argues that Robinson's co-worker, James Castro, should not have been allowed to testify as to what Robinson told him concerning the conversation with Superintendent Rendo. The plaintiff and the third-party defendants counter that the evidence was not objected to, Fed.R.Evid. 103, and in any event was properly admitted under the "residual hearsay exception" for unavailable declarants, Fed.R.Evid. 804(b)(5). The evidence was properly admitted.

Six weeks before trial, Modern had sought the addresses of all employees at 15 Charles Street, including Rendo, who Modern mistakenly believed was still superintendent. Village Towers did not respond to these interrogatories. Finally, Modern served notice to Village Towers of its intention to introduce testimony concerning specific statements that were made by Rendo to Robinson, pursuant to the residual hearsay exception of Fed.R.Evid. 803(24) and 804(b)(5). It was not until the first day of trial that Modern learned that Rendo had left Village Towers and could not be located. In a pretrial ruling, Judge Lasker decided to admit the testimony under Fed.R. Evid. 804(b)(5). *See* J.App. at 34–35.[5]

---

4. The court emphasized that the judgment n. o. v. in favor of Wasoff on the issue of negligence did not affect the verdict finding Wasoff strictly liable under the Labor Law—a verdict the court assumed, without deciding, to be legally correct. All that was altered was the apportionment of fault; the plaintiff could still look to Wasoff in the event that Village Towers could not satisfy the full judgment. Having decided this much, the court concluded that it was unnecessary to decide whether the Labor Law in fact applied to Wasoff, since under the cir-

cumstances it was clear that the judgment would be satisfied in full by Village Towers. Thus, the court ruled that as a practical matter the judgment n. o. v. finding Village Towers fully at fault eliminated the need to decide whether the Labor Law applied. Since the plaintiff has not appealed this ruling, we need not pass upon the issue.

5. In denying Village Towers' motion for a new trial, the court also justified admission of the testimony under Fed.R.Evid. 803(1), which al-

■ At the outset, the plaintiff and third-party defendants claim that Village Towers, having failed to object at trial, is precluded from raising the objection on appeal. *See, e. g., United States v. Del Llano,* 354 F.2d 844, 847 (2d Cir. 1965) *(in banc).* The purpose of requiring a timely objection is to identify the disputed issue and give the trial judge a chance to correct errors which might otherwise necessitate a new trial. *See Estelle v. Williams,* 425 U.S. 501, 508 n.3, 96 S.Ct. 1691, 1695 n.3, 48 L.Ed.2d 126 (1976); *United States v. Indiviglio,* 352 F.2d 276, 280 (2d Cir. 1965) *(in banc), cert. denied,* 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). In this case, however, Modern had served notice pursuant to Fed.R.Evid. 803(24) and 804(b)(5) of its intention to use Castro's testimony and had received a pretrial ruling permitting such testimony under Rule 804(b)(5). *See* J.App. at 34–35. Under these circumstances, the reasons for strictly applying Rule 103 are far less compelling. *See, e. g.,* C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5037 at nn.18–36 (1977 & Supp.1979). We need not make this determination, however, since we are convinced that the evidence was properly admitted.

Fed.R.Evid. 804(b) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(5) Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

We recognize that the residual exception should be invoked sparingly, *see* Committee on the Judiciary, Note to Paragraph (24), S.Rep.No.93–1277 at 19–20; *Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7th Cir. 1979), but conclude that the Castro testimony satisfied the conditions of Rule 804(b)(5). There is no dispute that the evidence was material, nor can there be any serious argument that the statement was not "more probative on the point for which it [was] offered" than other reasonably available evidence. Castro's testimony was the only evidence indicating that a Village Towers employee who was clearly aware of the condition of the gate prohibited the crew from removing the obstruction or using a safe passage. Such testimony was highly relevant to the negligence of Modern, Village Towers, and the decedent. Finally, the notice provided in this case is conceded to be adequate. Thus, the only issues are whether the testimony bore "equivalent circumstantial guarantees of trustworthiness" and whether "the general purposes of these rules and the interests of justice [were] best . . . served" by admitting the testimony.[6]

lows admission of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The court reasoned:

There is no "double hearsay" here because Rendo's statement was a "verbal act"—it was an "event" that established the "condition" under which the men were to work. Robinson's statement to Castro, then, was "a statement describing or explaining an event

or condition" made immediately after the "event" and contemporaneously with the "condition."

484 F.Supp. at 95. Since we agree that the evidence was properly admitted under Rule 804(b)(5), we need not pass upon the correctness of the district court's alternate holding.

6. Village Towers argues that "the legislative history of the Evidence Rules demonstrates that Congress intended to bar the admission"

In this case, Robinson immediately returned from Rendo's apartment to his crew and relayed to them the superintendent's instructions. He had little motive to dissemble, since following Rendo's directions made the job considerably more difficult. The wet and snowy weather conditions supported Robinson's account of why Rendo forbade the use of his apartment to gain access to the garage roof. Moreover, the condition of the garage roof clearly revealed that the area was frequently used by a dog, thus corroborating Robinson's explanation of why Rendo would not permit removal of the gate.[7] It strains credulity that Robinson would have fabricated such a story. Thus, the circumstances surrounding Robinson's statement in this case demonstrate a level of trustworthiness at least equivalent to that of evidence admitted under traditional hearsay exceptions. *See United States v. Iaconetti,* 406 F.Supp. 554, 559 (E.D.N.Y.) (Weinstein, J.), *aff'd,* 540 F.2d 574 (2d Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). Nor do we feel that admission

of the evidence poorly served the interests of justice. We note that this requirement—essentially a restatement of Fed.R. Evid. 102—is commended to the sound discretion of the trial judge. *See* Weinstein's Evidence ¶ 102[01] at 102–10 through 102–15; *Huff v. White Motor Corp., supra,* 609 F.2d at 291; *United States v. Friedman,* 593 F.2d 109, 118 (9th Cir. 1979). Given Modern's good faith efforts to discover the whereabouts of Rendo, the importance and apparent truthfulness of the evidence, and the lack of diligence of Village Towers in responding to the interrogatories or otherwise attempting to locate Rendo,[8] we cannot say that Judge Lasker abused his discretion in determining that admission of the evidence would best serve the interests of justice. *See Huff v. White Motor Corp., supra,* 609 F.2d at 295.

### D. *Damages*

Village Towers argues that the trial court erred in failing to grant a new trial based on the excessiveness of the damages.

---

of testimony such as Castro's. The owners point out that the originally proposed rules allowed hearsay evidence of an unavailable declarant's recent sense perceptions (proposed Rule 802(b)(2)) and contained a far broader catchall provision. These provisions, they contend, would have allowed the admission of Castro's testimony. But, they argue, the subsequent elimination of the "recent sense perception" exception and the substantial narrowing of the catchall provisions indicate that testimony such as Castro's is inadmissible.

This argument is unpersuasive. That Congress was unwilling to allow the admission of all recent sense perceptions is no indication that it intended to *exclude all* such perceptions. In the proper circumstances, Rule 804(b)(5) is an appropriate vehicle for admitting certain recent sense impressions. *See United States v. Medico,* 557 F.2d 309, 315 (2d Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977). Moreover, the tightening of the requirements of Rule 804(b)(5) does not suggest that in an appropriate case the rule should not be applied, but merely indicates that Congress was concerned lest the exception swallow the rule. *See* Committee on the Judiciary, Note to Paragraph (24), S.Rep.No.93–1277 at 18–20.

7. There is disagreement among the circuits as to the scope of a court's inquiry in determining "circumstantial guarantees of trustworthi-

ness." *Compare Huff v. White Motor Corp., supra,* 609 F.2d at 293 ("[T]he probability that the statement is true, as shown by corroborative evidence, is not, we think, a consideration relevant to its admissibility under the residual exception to the hearsay rule.") *with United States v. Bailey,* 581 F.2d 341, 349 (3d Cir. 1978) ("[T]he trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely."). In *United States v. Medico, supra,* 557 F.2d at 315–16, this Court seemed to use the broader inquiry employed in *Bailey.* We need not decide this issue, however, since we are convinced that even under the narrower test of *Huff,* the testimony was properly admitted.

8. When Village Towers finally answered the interrogatory on the first day of trial, it informed Modern that Rendo could not be located. However, when Rendo's whereabouts later became an issue, the court was able to locate him in Florida within a matter of hours by calling his successor at Village Towers. *See* 484 F.Supp. at 95–96.

The owners complain that while the plaintiff's expert calculated only $485,139 for loss of support and services, the jury returned with a verdict of $750,000 for that loss. But as this Court has repeatedly emphasized, "the deference paid by appellate courts to both the jury's factual findings and the district court's assessment is substantial." *Wheatley v. Beetar*, 637 F.2d 863 (2d Cir. 1980). In *Dagnello v. Long Island Rail Road Co.*, 289 F.2d 797 (2d Cir. 1961), which established in this Circuit the right of an appellate court to review the amount of a verdict, the court cautioned that "[t]he very nature of the problem counsels restraint" and held that an award may be reversed only if "the amount is so high that it would be a denial of justice to permit it to stand." *Id.* at 806. The standard has been succinctly stated in *Batchkowsky v. Penn Central Co.*, 525 F.2d 1121, 1124 (2d Cir. 1975):

> Where, as here, the trial judge, denying a motion for a new trial on grounds of excessiveness, has permitted a verdict to stand, we may order a new trial only when the verdict is irrational or so high as to shock the judicial conscience, rendering it an abuse of discretion not to set it aside. That we personally would have awarded a lesser sum or, if we had been the trial judge, have set the verdict aside, is insufficient.

Based on our review of the record and the cogent reasons set forth by the court in explaining how the jury could reasonably have arrived at a larger figure than plaintiff's expert, *see* 484 F.Supp. at 97–100, we cannot say that Judge Lasker abused his discretion in refusing to grant a new trial on the basis of excessiveness.[9]

■ The award for loss of consortium, however, must be set aside in light of the intervening decision of the New York Court of Appeals in *Liff v. Schildkrout*, 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980). As we recently held in *Hegger v. Green*, 646 F.2d 22 (1981), on direct review of a diversity case involving New York law, this Court is bound to apply the most recent pronouncements of New York's highest court. Accordingly, the judgment must be reduced to eliminate the $400,000 award for loss of consortium. *See Hegger v. Green, supra,* at 26–27.

We have reviewed the rest of appellant's contentions and have found them to be without merit. The plaintiff, Rita Robinson, and the third-party defendants, Modern and Wasoff, may recover their costs from Village Towers. No costs between the plaintiff and Wasoff. Judgment affirmed as modified.

---

9. In refusing to find the wrongful death award excessive as a matter of law, the court pointed to three factors which the jury could have relied upon in awarding a figure higher than that determined by the plaintiff's expert:

> First, Berenson's [plaintiff's expert] estimate did not take account of the possibility that the decedent might be promoted, and his wages increased. In this regard, the evidence established that the decedent was an extraordinarily productive man, accomplished in his trade, and very likely to prosper and improve his prospects. Second, with respect to the value of the decedent's household services, Berenson's estimate was based on government statistics for "average" individuals. The evidence established that the decedent's services around the home were far more substantial than those of the "average" individual. Finally, Berenson's estimate did not include any amount reflecting the intellectual, moral, and physical training, guidance and assistance that the decedent would have provided his children had he lived. The evidence established that the decedent was [a] devoted father who spent a great deal of time with his children and was very concerned with their welfare. In view of these considerations, the jury's award of an amount fifty percent greater than Berenson's conservative economic estimate was reasonable.

484 F.Supp. at 97–98.