Ronnish D. GUPTA, Petitioner,

v.

ATTORNEY GENERAL OF the UNITED STATES of America, Respondent.

No. 12cv5637–FM.

United States District Court, S.D. New York.

Signed Oct. 14, 2014.

Deborah Austern Colson, Colson & Harris LLP, New York, NY, for Petitioner.

Dana Michelle Camilleri, U.S. Department of Justice, Ann Varnon, Yanal H. Yousef, United States Dept. of Justice Office of Immigration Liti., Washington, DC, Yanal Harbi Yousef, Washington, DC, for Respondent.

### *MEMORANDUM DECISION AND ORDER*

FRANK MAAS, United States Magistrate Judge.

In this proceeding pursuant to ·8 U.S.C. § 1252(b)(5)(B), Plaintiff Ronnish Gupta ("Gupta") seeks a declaratory judgment that he is a United States citizen because he attained citizenship derivatively through his father, Ranjit Gupta ("Ranjit"). On March 20, 2014, 2014 WL 1116730, I issued a decision denying that application. (ECF No. 44 ("March 20 Decision")). Familiarity with the March 20 Decision is presumed.

Gupta has now filed a motion for reconsideration, (ECF No. 50) ("Mot. to Reconsider"), which the Attorney General opposes. As set forth below, I have reconsidered my prior evidentiary rulings and now conclude that the weight of the evidence tips, albeit only slightly, in Gupta's favor. Gupta's motion for reconsideration therefore is granted.

### I. *Standard of Review*

■ Gupta has moved for reconsideration of the Court's prior ruling under Local Civil Rule 6.3. Pursuant to that rule and Rule 60(b) of the Federal Rules of Civil Procedure, a court may reconsider its decision only if it has "overlooked 'controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court.'" *Kubicek v. Westchester County*, No. 08 Civ. 372(ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting *Mikol v. Barnhart*, 554 F.Supp.2d 498, 500 (S.D.N.Y.2008) (ellipsis in original)). Accordingly, a motion to reconsider is not "a vehicle for litigants to make repetitive arguments that the court has already considered and it cannot be used to fill in the gaps of a losing argument." *United States v. Treacy*, No. 08 Cr. 0366(RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (citing *Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000)); *see also de los Santos v. Fingerson*, No. 97 CIV. 3972(MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998) (a movant may not use a motion to reconsider as a means to commence a "dialogue ... to advance new theories or adduce new evidence in response to the court's rulings"). To prevail, the movant thus must establish either the existence of an intervening change in the controlling law, or the availability of new evidence, or that manifest injustice or clear error would otherwise result. *Treacy*, 2009 WL 47496, at *1. This is a strict standard. *SBC 2010–1, LLC v. Morton*, 552 Fed.Appx. 9, 11 (2d Cir.2013); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Ultimately, however, the decision on a motion for reconsideration is committed to the sound discretion of the district court. *Devlin v. Transp.*

*Commc'ns Int'l Union,* 175 F.3d 121, 132 (2d Cir.1999); *Mendell ex rel. Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990).

## II. *Discussion*

Gupta's reconsideration motion argues that the "Court made four critical errors warranting reversal" of the March 20 Decision, by (a) wrongfully "excluding as hearsay the testimony of Ranjit's brothers that Ranjit's letters were mailed from the United States;" (b) wrongfully "excluding as hearsay the contents of Ranjit's September 1970 phone call to Margaret Fried;" (c) "engag[ing] in improper speculation regarding the missing pages in Ranjit's second passport;" and (d) "misappl[ying] the preponderance of the evidence standard." (Mot. to Reconsider at 1). I will consider each of these claims in turn.

### A. *Ranjit's Letters*

Both sides seem to assume that the Court previously determined that the Gupta brothers' testimony regarding the stamps on the envelopes that the family received from Ranjit was hearsay and therefore inadmissible. Although I made no such finding, the text of Footnote 1 in the March 20 Decision admittedly may have caused some confusion. The purpose of that footnote was merely to establish that any assertion that Ranjit resided at a particular address based on the return address set forth on the envelopes would be based on inadmissible hearsay. On reconsideration, I adhere to that determination, as well as my prior ruling that the contents of the letters are also hearsay.

■ The testimony concerning the country that issued the stamps on the envelopes, however, is not hearsay. Indeed, the brothers' testimony regarding that subject actually provides some of the best evidence that Ranjit arrived in the United States in

December 1968. For that reason, the March 20 Decision expressly relied on that testimony as a basis for establishing the date of Ranjit's arrival here. (*See* March 20 Decision at 19, 21–22).

■ On reconsideration, however, it appears that my March 20 Decision did not give appropriate weight to the brothers' testimony that the letters bearing United States stamps continued to arrive after a brief hiatus in April or May 1970. The brothers both testified that Ranjit's letters stopped arriving for approximately one or two months, after which they continued to be received periodically. (ECF No. 31 ("Tr.") at 37–38, 47–48). Hari in particular affirmed that the letters continued to arrive "regularly" thereafter. (*Id.* at 48). The fact that the family noticed a mere one- or two-month gap in the letters supports the inference that the letters continued to arrive at least monthly from May 1970 onward. The brothers' testimony therefore suggests that Ranjit's letters, bearing United States postage, continued to arrive in India through the critical period of July or August 1970.

### B. *Fried Telephone Call*

■ The March 20 Decision also concluded that the Respondent's hearsay objection to Fried's testimony regarding the September 1970 telephone call had not been waived. (March 20 Decision at 17–18). I relied on three facts as the basis for this determination. First, I noted that I had stated at the outset of the hearing that I would not make " 'any evidentiary rulings with respect to hearsay, but [would] simply ... hear all of the evidence' and then [as I reach a decision] 'decide that which is admissible;' " second, I observed that, in response to this pronouncement, neither side had raised any objections during the hearing, other than two objections related to improper impeachment; finally,

I considered it significant that Gupta had been afforded an opportunity to address the Respondent's hearsay objection in his post-hearing reply. (*Id.*).

Gupta urges reconsideration of my ruling regarding the Respondent's hearsay objection on the grounds that my initial comment regarding reserving decision on evidentiary rulings pertaining to hearsay was "insufficient to relieve Respondent of its responsibility to raise a timely objection" and that, had the Respondent done so, "Gupta would have established that Ranjit called Fried from the United States." (Mot. to Reconsider at 8–9). In support of the latter proposition, Gupta has supplied the Court with new evidence regarding the "prohibitive[ ] expense[ ]" of making international calls at the time, as well as a sworn statement from Fried attesting to the fact that she "would have been surprised" to receive an international call from Ranjit. (*Id.* at 9; Ex. A).

■ It is well established that hearsay objections can be waived. *See, e.g., United States v. Del Llano,* 354 F.2d 844, 847 (2d Cir.1965): *Booth Oil Site Admin. Grp. v. Safety–Kleen Corp.,* 194 F.R.D. 76, 81 (W.D.N.Y.2000). The reason for this rule is to ensure that the trial court is given the "opportunity to remedy the [objectionable] situation." *Estelle v. Williams,* 425 U.S. 501, 509 n. 3, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). For this to be accomplished, objections must be made "while there is still time to rectify the asserted error." *Del Llano,* 354 F.2d at 848 (quoting *United States v. Woodner,* 317 F.2d 649, 651–52 (2d Cir.1963)); *see also Robinson v. Shapiro,* 646 F.2d 734, 742 (2d Cir.1981) ("The purpose of requiring a timely objection is to identify the disputed issue and give the trial judge a chance to correct errors which might otherwise necessitate a new trial."). The March 20 Decision assumed that there was

ample time to correct the purported legal error when the Respondent's objection was raised in post-hearing briefing because Gupta had the opportunity to respond to the objection in his post-hearing submissions. In making that assumption, I overlooked the fact that the objection came too late for Gupta to attempt to rectify the error by presenting additional evidence.

■ Having reconsidered the context in which the failure to object arose, it is clear that Gupta was led to believe that the Respondent had no objection to the admission of the contents of the call. In his motion for reconsideration, Gupta notes that the Respondent "had multiple opportunities to object to the introduction of Fried's testimony about the phone call and failed to do so." (Mot. to Reconsider at 5). Prior to the hearing, the Respondent had filed a motion in limine and a pretrial memorandum. (ECF Nos. 24, 25). Gupta similarly filed his own motion in limine and pretrial memorandum. (ECF Nos. 26, 27). The Respondent then filed a response in opposition to Gupta's motion in limine. (ECF No. 28). Throughout this briefing, the Respondent never mentioned Fried or the September 1970 call, even though it argued that the testimony of Rathin and Hari Gupta should be excluded on hearsay grounds. (ECF. No. 25 at 9–10). Indeed, in his pretrial memorandum, the Respondent argued that Fried alone had "admissible evidence," mentioned the 1970 phone call, and cited to the portion of Fried's deposition in which she testified, as she did at the hearing, that Ranjit called her in September 1970 to tell her that he "was working on [a] farm" in upstate New York. (ECF No. 25 at 11; Ex. D at 13). Gupta also described this call, without any objection by the Respondent, in the summary of evidence presented in his prehearing memorandum. (ECF No. 26 at 6). In these circumstances, it seems clear that Gupta

could not reasonably have anticipated the Respondent's objection to the September 1970 call and the consequent need to elicit testimony regarding the surrounding circumstances. Although the Court's statement at the outset of the hearing indicated that hearsay objections would not result in immediate rulings, that did not relieve the Respondent of his obligation to voice objections at a time when any evidentiary problems could have been rectified.

■ Gupta argues further that he should be permitted to "address the merits of the objection now to prevent a 'manifest injustice.'" (Mot. to Reconsider at 8 (quoting *Murray v. Coleman*, 737 F.Supp.2d 121, 128 (W.D.N.Y.2010))). On a motion for reconsideration under Local Civil Rule 6.3, parties generally may not present new evidence. *de los Santos*, 1998 WL 788781, at *1. In particular, the rule forbids the submission of supporting affidavits absent the direction of the Court, because motions to reconsider are "not an occasion for making arguments and offering evidence that could have been, but was not, adduced on the original motion." Local Civ. R. 6.3.[1] Here, however, Gupta was denied an opportunity to present relevant evidence in the prior proceedings due to the Government's failure to interpose a timely objection. Moreover, the cost of international phone calls in or around 1970 is a matter about which the Court could well have taken judicial notice. *See* Fed. R.Evid. 201; *L.A. Gas & Elec. Corp. v. R.R. Comm'n of Cal.,* 289 U.S. 287, 308–09, 53 S.Ct. 637, 77 L.Ed. 1180 (1933) (taking judicial notice of prices of labor and materials in previous years); *Metro. Transp. Auth. v. F.E.R.C.*, 796 F.2d 584, 593 (2d

Cir.1986) (taking judicial notice of a decline in the price of oil); *Mo. Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 864 n. 27 (2d Cir.1974) (taking judicial notice of the relationship between construction costs and commodity prices). In order to avoid a manifest injustice, the Court therefore will take judicial notice that international calls might have been prohibitively expensive in 1970 for someone, like Ranjit, with limited means at his disposal.

By ruling that the Respondent had not waived his hearsay objection, the Court ignored the possibility that Gupta could have corrected any gap in the record by presenting additional, non-hearsay evidence concerning Ranjit's whereabouts in 1970 had a hearsay objection timely been made. Accordingly, because the exclusion of this evidence in response to Respondent's untimely objection would work a manifest injustice, I now find that the Respondent's hearsay objection has been waived. Fried's prior testimony regarding the substance of the September 1970 call will therefore be received.

### C. *Passport*

Gupta next asserts that the Court erred by drawing a negative inference from the fact that certain pages of Ranjit's second passport were missing. Gupta has presented no controlling precedent that indicates that such an inference was improper, or that the Court should have ignored such a glaring omission. As the Second Circuit has stated in an unrelated context, "[j]udges are not required to exhibit a naivete from which ordinary citizens are free." *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir.1977). According-

---

1. "[N]ewly discovered evidence that, with reasonable diligence, could not have been discovered," is admissible in support of a motion under Federal Rule of Civil Procedure 60(b)(2). Gupta expressly disavows entitle-

ment to relief under that provision, however, and makes no argument that the evidence presented in his motion for reconsideration is newly discovered.

ly, because I continue to be troubled by the missing pages, I adhere to my prior rulings on this issue.

### D. *Burden of Proof*

Finally, Gupta contends that the Court misapplied the burden of proof in this case. Gupta relies principally on two Court of Appeals decisions, arguing that the preponderance of the evidence standard as applied to the question of "continuous presence" in the United States does not require evidence of day-to-day presence, but instead only evidence of presence on intermittent dates.

In the first of those cases, *Hernandez v. Holder,* 736 F.3d 234 (2d Cir.2013), both an immigration judge and the Board of Immigration Appeals found that the petitioner had failed to establish his continuous presence in the United States. Under 8 U.S.C. § 1229(b)(1)(A), to be eligible for cancellation of removal, the petitioner had to have been continuously present in the United States for ten years prior to the issuance of his notice to appear in April 2007. The petitioner offered his own testimony that he arrived in the United States in July 1996, evidence of the birth of his child in New York in March 1998, proof of his addresses in Connecticut from 2001 to 2006, and other evidence of his presence in the United States in the 2000s. The Second Circuit found that this evidence, together with the absence of any evidence "tending to disprove Hernandez's presence," was sufficient to meet his burden of proving his continuous presence by a preponderance of the evidence. *Hernandez,* 736 F.3d at 237.

In the second case, *United States v. Garcia–Jimenez,* 623 F.3d 936 (9th Cir. 2010), the Ninth Circuit upheld the district court's finding that the defendant had been continuously present in the United States between April 20, 2007, and April 2, 2009, for the purposes of identifying the date on which he had "committed" the offense of illegal reentry. 623 F.3d at 940–42. The district court based its finding on evidence that the defendant was present in the United States on intermittent dates throughout that period, and that it would have been "illogical for Garcia to leave the United States" because he had lived in the country "since he was five years old, had children who were United States citizens, had a fiance who lived in the United States, and had come back to the United States both times after [being] deported." *Id.* at 941–42.

In both cases, therefore, the courts relied on evidence that an individual was present on two specific dates, and the absence of any evidence that he departed in the interim, to infer his continuous presence throughout the period *between* those two dates. In the March 20 Decision, however, I concluded that the contents of the September 1970 call had to be excluded. Accordingly, the Court only had evidence of Ranjit's presence in the United States prior to May 1970. The notion that he had thereafter remained in the United States also was called into question by the Respondent's evidence that Ranjit had left the United States and returned to Germany at some point, documents in his alien file indicating that he had spent much of the relevant period in Germany, and the suspicious circumstances surrounding the partial destruction of his second passport.

### E. *Ruling on Reconsideration*

 Now that I have reconsidered my prior decision with respect to the issue of waiver, the record before this Court includes Fried's uncontroverted testimony that Ranjit placed a call to her in September 1970, during which he told her that he

was working at a farm in New York.[2] This evidence, taken together with the Court's renewed consideration of Ranjit's continued correspondence with his family after May 1970, and the high cost of international calls at the time, must be weighed against the inference that the missing pages missing from Ranjit's second passport would have been unfavorable to Gupta had they been available for my inspection. Because the inference that I have drawn from the passport necessarily involves some degree of speculation, the evidence that Ranjit continued to send letters from the United States, taken together with Fried's testimony concerning the September 1970 call, tips the scales—although admittedly only slightly—in Gupta's favor. Accordingly, upon reconsideration, I find that Gupta has met his burden of proving by a preponderance of the evidence that his father was present in the United States for ten years prior to his birth.

### III. *Conclusion*

For the reasons set forth above, Gupta's motion for reconsideration, (ECF No. 50), is granted, as is his petition seeking a declaration that he is a United States citizen. I note that the United States Court of Appeals for the Third Circuit has stayed Gupta's removal. The Respondent is therefore cautioned to take no action to deport or remove Gupta until that court has issued a final determination in this matter.

SO ORDERED.

2. The Respondent attempts to argue that Fried's testimony regarding the call is unreliable because she allegedly testified previously that she had not had contact with Ranjit between March 1970 and 1977. (*See* ECF No. 55 at 4 (citing ECF No. 38 at 8 n. 5)). Although the Respondent attempted to elicit testimony regarding this purported prior inconsistent statement at the hearing, his counsel's efforts to do so proved unsuccessful. (*See* Tr. 17). Accordingly, there is no basis for the Court to reject Fried's trial testimony on the basis of any prior inconsistent statements that she may have made.